# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

CHRIS BRAY, Individually and on Behalf of
All Others Similarly Situated,

      Plaintiff,

      v.

FRONTIER COMMUNICATIONS
CORPORATION, DANIEL J. MCCARTHY,
RALPH P. MCBRIDE, JOHN M.
JURELLER, and DONALD W. DANIELS,

      Defendants.

No. 3:17-cv-1617 (VAB)

LARISA ROZENBERG, Individually and on
Behalf of All Other Similarly Situated,

      Plaintiff,

      v.

FRONTIER COMMUNICATIONS
CORPORATION, DANIEL J. MCCARTHY,
RALPH P. MCBRIDE, JOHN M.
JURELLER, and DONALD W. DANIELS,

      Defendants.

No. 3:17-cv-1672 (VAB)

LISA R. MORROW, Individually and on
Behalf of All Other Similarly Situated,

      Plaintiff,

      v.

FRONTIER COMMUNICATIONS
CORPORATION, DANIEL J. MCCARTHY,
RALPH P. MCBRIDE, JOHN M.
JURELLER, and DONALD W. DANIELS,

      Defendants.

No. 3:17-cv-1759 (VAB)

ST. LUCIE COUNTY FIRE DISTRICT
FIREFIGHTERS' PENSION TRUST FUND,
Individually and on Behalf of All Other
Similarly Situated,

      Plaintiff,

      v.

FRONTIER COMMUNICATIONS
CORPORATION, DANIEL J. MCCARTHY,
RALPH P. MCBRIDE, JOHN M.
JURELLER, DONALD W. DANIELS,
MARY AGNES WILDEROTTER, LEROY
T. BARNES, JR., PETER C.B. BYNOE,
DIANA S. FERGUSON, EDWARD
FRAIOLI, PAMELA D.A. REEVE,
VIRGINIA P. RUESTERHOLZ, HOWARD
L. SCHROTT, LARRAINE D. SEGIL,
MARK SHAPIRO, MYRON A. WICK, III,
J.P. MORGAN SECURITIES LLC,
MERRILL LYNCH, PIERCE, FENNER &
SMITH INC., CITIGROUP GLOBAL

No. 3:17-cv-1825 (VAB)

MARKETS INC., CREDIT SUISSE
SECURITIES (USA) LLC, BARCLAYS
CAPITAL INC., MORGAN STANLEY &
CO. LLC, MIZUHO SECURITIES USA
INC., DEUTSCHE BANK SECURITIES
INC., GOLDMAN, SACHS & CO., and UBS
SECURITIES LLC,

   Defendants.

## RULING AND ORDER ON MOTIONS TO CONSOLIDATE, APPOINT LEAD PLAINTIFF, AND APPROVE LEAD COUNSEL

Chris Bray ("Plaintiff" or "Mr. Bray") filed a Complaint in this Court under the Securities Exchange Act of 1934, alleging that Frontier Communications Corporation and related Defendants ("Defendants" or "Frontier") made false or misleading statements about Frontier's business and caused investors to suffer financial losses as a result.

Since the filing of Bray's lawsuit, three other similar lawsuits against Frontier have been filed: *Rozenberg v. Frontier Communications Corporation*, 17-cv-1672; *St. Lucie County Fire District Firefighters' Pension Trust Fund*, 17-cv-1825; and *Morrow v. Frontier Communications Corp.*, 17-cv-1759. All have now been transferred to this Court. The Court must decide whether these four lawsuits should be consolidated. In addition, eleven parties timely moved to be appointed lead plaintiff and to have their choice of lead counsel approved.

For the following reasons, the motions to consolidate are **GRANTED**. In addition, the motion to be appointed lead plaintiff filed by the Arkansas Teacher Retirement System ("Arkansas Teacher") and Carlos Lagomarsino ("Mr. Lagomarsino") is **GRANTED**, and the motion for the Court to approve their lead counsel, Bernstein Litowitz, is also **GRANTED**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

A.     **Factual Allegations**

On April 1, 2016, Frontier, a company that provides communications services including broadband, video, and voice services in the United States, allegedly acquired wireline operations in California, Texas, and Florida for $10.5 billion in cash and assumed debt from Verizon Communications, Inc. Compl. at 2, ECF No. 1 [1]

On February 27, 2017, Frontier allegedly disclosed an $80 million net loss for the fourth quarter of 2016. Daniel McCarthy, the Chief Executive Officer ("CEO") of Frontier, explained that one factor influencing the loss was the "resolution of non-paying" accounts acquired from Verizon. *Id.* The company allegedly held a conference call, and Mr. McCarthy stated that Frontier had been doing account cleanup since July 20, 2016, and that it had begun to disconnect non-paying accounts at the end of August 2016. *Id.* at 2-3. The Complaint also alleges that "McCarthy further stated that the Company began to reserve aging accounts in accordance with [its] normal policies in [the second quarter of] 2016 and then increased its reserves." *Id.* In the third and fourth quarters, McCarthy allegedly explained, the Company permanently disconnected non-paying accounts. *Id.*

On February 28, 2017, Frontier's stock price allegedly fell by thirty-six cents per share, or almost eleven percent, to close at $2.93 per share. *Id.*

On May 2, after the first quarter of 2017, Frontier allegedly reported a net loss of $75 million and a year-over-year first quarter revenue decline of $53 million. *Id.* The Complaint alleges that "[o]n the call, Defendant McBride stated that approximately $16 million of the

---

[1] The factual allegations are drawn from the Complaint filed by Mr. Bray in docket 3:17-cv-1617 and occurred between April 1, 2016 and May 2, 2017 (the "Bray Class Period"). Compl. at 2.

sequential revenue decline was a result of cleanup of . . . non-paying accounts and the automation of legacy non-pay disconnects." *Id.* Mr. McBride allegedly stated that the account cleanup represented $11 million of reduced revenue, and non-paying disconnects represented a $5 million in reduced revenue, which would be a "one-time impact." *Id.*

On May 3, 2017, Frontier's stock price allegedly fell by thirty-two cents, or sixteen percent, to close at $1.61. *Id.*

B.   **Procedural History**

Mr. Bray filed a Complaint in this Court on September 26, 2017, claiming that, "[t]hroughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects." *Id.* The Complaint claims:

> Specifically, Defendants failed to disclose: (1) that the Company acquired a substantial number of non-paying accounts as part of its acquisition of the wireline operations of Verizon Communications, Inc.; (2) that, as a result, the Company would be required to increase its reserves, and write off amounts from accounts receivable associated with the non-paying accounts; and (3) that, as a result of the foregoing, Defendants' statements about Frontier's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

Compl. at 3. Mr. Bray asserts that Defendants violated Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. 240.10b-5, issued by the Securities and Exchange Commission ("SEC").

Mr. Bray claims that this Court has federal question jurisdiction over the matter under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

The Complaint in *Rozenberg* states that that action "is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise

acquired Frontier securities between April 1, 2016, and May 2, 2017 . . . ." *Rozenberg v. Frontier Communications Corporation*, 17-cv-1672, Compl. at 2, ECF No. 1. The plaintiffs bring claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1932 and Rule 10b-5. *Id.* The Complaint alleges that "Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies," and that, "[a]s a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages." *Id.* at 2-5.

The Complaint in *Morrow* makes similar allegations:

> This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Frontier securities between February 6, 2015, and May 2, 2017 . . . seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

*Morrow v. Frontier Communications Corp.*, 17-cv-1759-VAB, ECF No. 1 at 2. The *Morrow* Complaint alleges that Frontier "failed to disclose the underperformance of the Verizon Acquisition," and that as a result its investors suffered damages when Frontier's stock fell. *Id.* at 2-4.

The Complaint in *St. Lucie County* brings claims against Frontier on behalf of all persons who "purchased or otherwise acquired Frontier Communications Corp. . . . securities between February 6, 2015, and May 2, 2017, . . . and were damaged thereby." *St. Lucie County Fire District Firefighters' Pension Trust Fund*, 17-cv-1825-VAB, Compl. at 2, ECF No. 1. It brings claims under Sections 10(b) and 20(a) of the Exchange Act and the SEC's Rule 10b-5. Compl. at 4. The St. Lucie Complaint alleges claims against Defendants that are not included in the *Bray*

Complaint, including J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc.,

Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Barclays Capital Inc.,

Morgan Stanley & Co. LLC, Mizuho Securities USA Inc., Deutsche Bank Securities Inc.,

Goldman, Sachs & Co. LLC, and UBS Securities LLC, as "Underwriter Defendants." *Id*. at 5-7,

15. The Complaint alleges that the Underwriter Defendants "participated in the solicitation,

offering, and sale of the securities to the investing public pursuant to the Offering Materials[,]"

which were "inaccurate and misleading" in order to persuade individuals to buy Frontier stock.

*Id.* at 14-15.

Eleven parties have moved to consolidate these cases and to be appointed lead plaintiff.

First, John Dubois moved to consolidate *Bray*, *Rozenberg*, *Morrow*, and *St. Lucie*, and moved to

be appointed lead plaintiff, with the Rosen Law Firm, P.A., to be lead counsel and Faxon Law

Group, LLC as Liaison Counsel for the litigation. ECF No. 23. On December 18, 2017, Mr.

Dubois, "having reviewed the competing lead plaintiff motions," determined that he did not have

the largest financial interest and withdrew his motion to be appointed lead plaintiff. ECF No. 55

at 2.

Second, Gene R. Wills moved to consolidate the four cases, and moved to be appointed

lead plaintiff and to approve his choice of lead counsel, Kessler Topaz Meltzer & Check, LLP as

lead counsel and Brenner, Saltzman & Wallman LLP as liaison counsel for the class. ECF No.

28. On December 18, 2017, Mr. Wills withdrew his motion to be appointed lead plaintiff, noting

that "based upon the representations made by competing movants in their respective motions, it

appears that Arkansas Teacher Retirement System has the largest financial interest in this

litigation and otherwise satisfies the relevant requirements of Rule 23." ECF No. 54 at 1.

Third, Richard Linke moved to consolidate the four cases, to be appointed lead plaintiff, and to approve his choice of lead counsel, Kahn Swick & Foti, LLC. ECF No. 31. On December 22, 2017, Mr. Linke filed a notice of non-opposition to competing lead plaintiff motions, recognizing that he "does not appear to have the largest financial interest and therefore provides notice that he does not oppose the competing lead plaintiff motions." ECF No. 63 at 3.

Fourth, Raymond East moved to consolidate the four cases, to be appointed lead plaintiff, and to have his choice of counsel, Faruqi & Faruqi, LLP approved as lead counsel, and Shepherd, Finkelman, Miller and Shah, LLP approved as liaison counsel. ECF No. 33. On December 18, 2017, Mr. East filed a notice of non-opposition to competing lead plaintiff motions, recognizing that he does not have the greatest financial interest of the litigants. ECF No. 56 at 3.

Fifth, Michael Holub moved to consolidate, to be appointed lead plaintiff, and for approval of his choice of lead counsel, Kirby McInerney LLP, and liason counsel, Ury & Moskow, LLC. ECF No. 36. On January 9, 2018, Mr. Holub withdrew his motion to appointed lead plaintiff, stating that he did not appear to have the largest financial interest at stake. ECF No. 74.

Sixth, Stephen Doo and Scott Bugbee moved to consolidate the four cases and to be appointed lead plaintiffs, either individually or together. ECF No. 37. Mr. Doo and Mr. Bugbee asserted that they had the largest financial interest in the lawsuit: Mr. Doo stated that he "knows of no other shareholder who incurred greater losses in connection with purchases of common shares and Mr. Bugbee knows of no other shareholder who incurred greater losses in connection with purchases of Frontier Preferred shares." Memo. in Support, Doo & Bugbee, at 10, ECF No. 39. They claim that they suffered a combined loss of approximately $2.35 million. *Id.* at 16. Mr.

Doo and Mr. Bugbee filed a notice of non-opposition on December 15, 2017, stating that they do "not oppose the competing motion filed by Arkansas Teacher Retirement System and Carlos Lagomarsino." ECF No. 53. On December 28, 2017, approximately two weeks after they filed their Notice of Non-Opposition, Mr. Doo and Mr. Bugbee filed a Reply, arguing that "if the Court declines to appoint the [Arkansas Teacher] Group as lead plaintiff, then the PSLRA requires that Mr. Bugbee and Mr. Doo, the movants with the next-largest financial interest and who satisfy the requirements of Rule 23, be jointly appointed Lead Plaintiff for the Class." Doo & Bugbee Reply at 4, ECF No. 66.

Seventh, ATM Four LLC moved to consolidate the four cases, to be appointed lead plaintiff, and for approval of its choice of lead counsel, Glancy Prongay & Murray LLP. ECF No. 40. ATM Four LLC did not move to withdraw its motion, but it also did not file an opposition to the other parties that filed motions to be appointed lead plaintiff. Specifically, ATM Four has not filed a brief in opposition to FTR Investor Group ("FTR") or Arkansas Teacher as lead plaintiff. FTR suggests that because of ATM Four's lack of brief in opposition, ATM Four is no longer competing for lead plaintiff. Memo. in Opp., ECF No. 64 at 3 ("On December 18, 2017, only two movants, the Arkansas Group and the FTR Investor Group, timely filed memoranda in opposition to the competing motions.").

Eighth, FTR moved to consolidate the four cases, to be appointed lead plaintiff, and for approval of its choice of lead counsel, Brower Piven, and liaison counsel, Rome McGuigan, P.C. ECF No. 44. FTR is a "small, cohesive group of five members." Memo. in Support of Lead Pl. Mot., ECF No. 45 at 1. FTR claims that it "suffered a loss of approximately $671,390.32 as a result of its purchases" of Frontier stock during the Class Period. *Id.* at 2.

Ninth, Sam Raff, Orah Raff, Danny Raff, and Edward Hopkins (together, the "Raff Family Group") moved to consolidate, moved to be appointed lead plaintiffs, and moved for approval of their choice of lead counsel, Gainey McKenna & Egleston. ECF No. 46 at 3-4. The Raff Family Group moved to withdraw its motion to be appointed lead plaintiff. ECF No. 65.

Tenth, Wayne County Employees' Retirement System moved to consolidate, to be appointed lead plaintiff, and for approval of its choice of lead counsel, Robbins Geller Rudman & Dowd LLP, and local counsel, Izard Kindall & Raabe, LLP. ECF No. 48 at 1. On December 11, 2017, Wayne County Employees' Retirement System moved to withdraw its motion. ECF No. 52.

Eleventh, Arkansas Teacher and Carlos Lagomarsino moved to consolidate, to be appointed lead plaintiffs, and for approval of their choice of lead counsel, Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz"). ECF No. 50. Arkansas Teacher and Mr. Lagomarsino "comprise a small, cohesive partnership of sophisticated investors that spoke together and determined on their own to jointly seek appointment as Lead Plaintiff." *Id.* at 12. "Arkansas Teacher and Mr. Lagomarsino believe that they have the largest financial interest in the relief sought in this action by virtue of, among other things, the approximately $8 million in losses that they incurred on Class Period purchases of Frontier common and preferred stock." ECF No. 50 at 3. Arkansas Teacher and Mr. Lagomarsino also filed a memorandum in opposition to the other parties' motions to be appointed lead plaintiff, arguing that Arkansas Teacher and Mr. Lagomarsino are the presumptive lead plaintiffs because they suffered the largest financial loss of the movants and satisfy the requirements of Rule 23. ECF No. 60.

FTR opposes Arkansas Teacher's claim as Lead Plaintiff, arguing that Arkansas Teacher is "presumptively barred from being appointed lead plaintiff by the PSLRA's Professional

Plaintiff Provision, 15 U.S.C. § 78u-4(a)(3)(B)(vi)." FTR Memo. in Opp., ECF No. 64 at 3. FTR

claims that Arkansas has sought to be lead plaintiff in at least eighteen cases over the past five

years, and has served as lead plaintiff in at least fifteen cases. *Id.* Second, FTR argues that

joining an institutional investor, the Retirement Group, with an individual investor, Mr.

Lagomarsino, presents a problem because Arkansas Teacher will "not actually cede any control

to Lagomarsino." *Id.* at 3-4. Third, FTR claims that Mr. Lagomarsino's class period transactions

"appear to be inaccurate and he has submitted an inaccurate PSLRA certification," which, FTR

argues, undermines his credibility and his argument for typicality. *Id.* at 4. Fourth, "the Arkansas

Group's methodology for calculating its financial interest impermissibly fails to connect the

share price decline to corrective information and results in loss figures that the Supreme Court

has rejected as a basis for recovery in a federal securities action in *Dura Pharms., Inc. v. Broudo*,

544 U.S. 336, 338 (2005)." *Id.* at 4.

FTR also argues that Mr. Lagomarsino made two class-period stock purchases that place

him in an unusual, perhaps suspicious, and atypical position: on August 4, 2016, he allegedly

purchased one million shares at a single trade price two percent below the lowest Frontier

common stock trade on that day, and on September 21, 2016, he made a 1,000,000-share trade at

a single price, and a 595,230-share trade at a single price. FTR Memo. in Opp. at 11-13, ECF

No. 57; FTR Reply at 3-4. FTR argues that trades of that size at a single price, in a single

purchase, are very unusual and should raise red flags for the Court about Mr. Lagomarsino's

adequacy as a lead plaintiff. FTR Reply at 4.

Arkansas Teacher and Mr. Lagomarsino argue that they are the presumptive lead

plaintiffs in this consolidated case because, out of all of the plaintiffs in this class action, they

suffered the largest financial loss—approximately $8 million. Ark. Memo. in Opp., ECF No. 60

at 6 (citing 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I)). They argue that they satisfy the typicality and adequacy requirements of Rule 23 because they incurred losses from purchasing both Frontier common and Frontier preferred shares, "at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions" and were damaged by those purchases." *Id.* at 10. They claim that they "are willing and able to undertake the responsibilities entailed in serving as Lead Plaintiff." *Id.* at 7. They argue therefore that they are entitled to the rebuttable presumption that they are the most adequate plaintiff under the PSLRA. *Id.* at 10.

Arkansas Teacher and Mr. Lagomarsino also claim that FTR's argument, that Arkansas Teacher should be precluded from being lead plaintiff under 15 U.S.C. § 78u-4(a)(3)(B)(vi), is wrong because that statute aims to protect against lawyer-driven class action litigation, and, in this case, the institutional and individual investors have taken steps to effectively manage the litigation. Ark. Reply at 11-12, ECF No. 70 (citing *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (finding that professional plaintiff statute did not apply where "[r]epresentatives from the different funds ha[d] discussed their decision to act jointly in the case and have made plans for joint oversight over the litigation and joint supervision of counsel, including implementing protocols for regular communication among members and with counsel")).

In addition, Arkansas Teacher provided a declaration and attached spreadsheets of Mr. Lagomarsino's purchases of Frontier stock. Ark. Reply Ex. A at 1-2. Arkansas Teacher and Mr. Lagomarsino explained that he contacted Merrill Lynch, discovered that the losses incurred were in fact greater than initially asserted, and provided a corrected certification. Narwold Decl., Ex. A ¶ 5. Mr. Lagomarsino also stated that he did not purchase the shares outside of market hours.

12

*Id.* Arkansas Teacher and Mr. Lagomarsino argue that the miscalculation of Mr. Lagomarsino's financial loss should not amount to evidence that he is not an adequate lead plaintiff in the case.

## II.     STANDARD OF REVIEW

This opinion reviews the three separate, but related, motions: a motion to consolidate, a motion to appoint lead plaintiff, and a motion to approve lead counsel, under the following legal standards:

### A.     Motions to Consolidate

A district court will consolidate actions that share "common question[s] of law or fact." Fed. R. Civ. P. 42(a). "A party moving for consolidation 'must bear the burden of showing the commonality of factual and legal issues in different actions, and a district court must examine the special underlying facts with close attention before ordering a consolidation.'" *R.W. Grand Lodge of Free & Accepted Masons of Pennsylvania v. Meridian Capital Partners, Inc.*, 634 Fed. App'x 4, 6 (2d Cir. 2015) (quoting *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993)). "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *In re Facebook, Inc., IPO Securities and Derivative Litig.*, 288 F.R.D. 26, 34 (S.D.N.Y. 2012) (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)).

### B.     Appointment of Lead Plaintiff

Under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 77z-1, *et seq.*, the court must appoint a lead plaintiff "as soon as practicable" after a class action securities lawsuit has been consolidated. 15 U.S.C. § 78u-4(a)(3)(B)(ii). In selecting a lead plaintiff:

> [T]he court shall adopt a presumption that the most adequate plaintiff . . . is the person or group of persons that—(aa) has either

> filed the complaint or made a motion [to be lead appointed lead plaintiff]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted when a member of the purported plaintiff class proves that the "presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class . . . [or] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Metro Services Inc. v. Wiggins*, 158 F.3d 162, 164 (2d Cir. 1998) (quoting PSLRA and reviewing district court's appointment of co-lead plaintiffs in a multidistrict consolidated lawsuit); *Schaffer v. Horizon Pharma Plc*, 2016 WL 3566238, at *1, 4 (S.D.N.Y. 2016) (denying motion for reconsideration after court granted a motion to be appointed lead plaintiff because although one party had "'the largest financial interest' and thus was the presumptive lead plaintiff, that presumption had been rebutted by 'proof' that [the party] would not 'adequately protect the interests of the class'" (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii))).

### C.   Approving Lead Counsel

After the court selects a lead plaintiff, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z-1(a)(3)(B)(v). At this stage, the court approves or disapproves the lead plaintiff's choice, but defers to the lead plaintiff's preference and does not make the choice itself. *In re Host America Corp. Securities Litig.*, 236 F.R.D. 102, 104 (D. Conn. 2006) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 274 (3d Cir. 2001)).

### III.    DISCUSSION

The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 77z-1, *et seq.*, sets forth procedures for the initial stages of a securities class action. *See In re Host America Corp. Securities Litig.*, 236 F.R.D. at 104. The Court must first decide any pending motions to consolidate. *Id.* (citing 15 U.S.C. § 77z-1(a)(3)(B)(ii)). Then, if the Court grants a motion to consolidate and the actions are consolidated, and if notice was properly given, "[a]s soon as practicable after such [consolidation] decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions . . . ." 15 U.S.C. § 17z-1(a)(3)(B)(ii). After that, the Court will consider the lead plaintiff's choice for lead counsel. 15 U.S.C. § 77z-1(a)(3)(B)(v).

In this case, there is no dispute that notice was properly given under 15 U.S.C. § 78u-4(a)(3)(A)(I). *E.g.*, Faxon Decl. Ex. 1, ECF No. 25-1**.** The Court therefore only addresses the motions to consolidate, appoint a lead plaintiff, and approve lead counsel. *See In re Extreme Networks Inc. Sec. Litig.*, 2016 WL 3519283, at *2 (N.D. Cal. June 28, 2016) (proceeding same).

### A.    The Motion to Consolidate

Motions to consolidate the following cases have been filed: *Rozenberg v. Frontier Communications Corporation*, 17-cv-1672-MPS; *St. Lucie County Fire District Firefighters' Pension Trust Fund*, 17-cv-1825-VAB; and *Morrow v. Frontier Communications Corp.*, 17-cv-1759-VAB. The Court agrees that these three cases should be consolidated with the Bray case and based on the filings and the representations made at oral argument, there is no opposition.

The Court may consolidate actions when they "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *see also R.W. Grand Lodge of Free & Accepted Masons of Pennsylvania v. Meridian Capital Partners, Inc.*, 634 Fed. App'x 4, 6 (2d Cir. 2015) (holding

that district court did not abuse its discretion when it consolidated claims that had "common questions of fact among all four consolidated actions which center on the representations that Appellees made in their investor presentations, quarterly reports, and letters to investors that" affected investors' financial decisions); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990) ("Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay."). In *Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, for example, the court consolidated actions that each involved "class actions claims brought on behalf of class members who traded stock on the NYSE during the proposed class period or a portion of that period." 229 F.R.D. 395, 401-02 (S.D.N.Y. 2004).

Here, the four cases each allege that Frontier made false or misleading statements, that misrepresented the company's performance and its prospects, and that individuals and groups that purchased Frontier securities suffered damages as a result. They all also bring claims under Section 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated by the SEC, 17 C.F.R. § 240.10b-5. *See Pirelli Armstrong Tire Corporation*, 229 F.R.D. at 402 (consolidating actions where "[e]ach of the actions asserts essentially similar and overlapping claims and involves common issues of law and fact, in that each action alleges that some or all of Defendants engaged in a fraudulent scheme . . . in violation of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, among other things").

Although the Complaint in *St. Lucie County* brings claims against Defendants that are not named in the other actions, "[t]hat certain defendants are named in only one or some of the complaints does not require a different result[,]" i.e., the denial of a motion to consolidate. *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 402 (citing *Pinkowitz v. Elan Corp., PLC*, 2002 WL

1822118, at *3 (S.D.N.Y. July 29, 2002) (internal citations omitted)); *see also Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992) ("The fact that there are different parties in this action does not mean this case should not be consolidated.").

The Complaints also allege damages during overlapping, but not identical, time periods: February 6, 2015 until May 2, 2017 in the *Morrow* and *St. Lucie* Complaints, and April 1, 2016 until May 2, 2017 in the *Rozenberg* and *Bray* Complaints. Although these time periods are not exactly the same, they overlap and address essentially similar time frames. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 402 (consolidating cases brought "on behalf of class members who traded stock on the NYSE during the proposed class period or a portion of that period" and explaining, "[n]or do differences among the class periods proposed preclude consolidation"). Because these actions share common questions of fact, Frontier's misrepresentations about the company's health, and law, SEC rules and regulations, the differences in the start date of the class period "do not outweigh the interests of judicial economy served by consolidation." *See In re Facebook, Inc., IPO Securities and Derivative Litig.*, 288 F.R.D. at 34 (quoting *Kaplan*, 240 F.R.D. at 91).

The Court therefore finds that there is substantial overlap in the questions of fact and law in these four Complaints, and in the interest of judicial economy, the Court will grant the motions to consolidate.

### B.      Motion to Appoint Lead Plaintiff

Eleven parties initially filed motions for appointment as lead plaintiff and approval of lead counsel. *Bray*, 3:17-cv-1617, ECF Nos. 23, 28, 31, 33, 36, 37, 40, 44, 46, 48, and 50. Since then, eight parties have withdrawn their motions, and one failed to file a reply. *See* ECF Nos. 40, 52, 53, 54, 55, 56, 63, 65, 74. That leaves only two: FTR, ECF No. 44; and Arkansas Teacher

and Carlos Lagomarsino, ECF No. 50. After review of the various filings and having heard oral argument, the Court determines that the motion for appointment as lead plaintiff of the Arkansas Teacher Retirement System and Carlos Lagomarsino will be granted.

Any class member or group of class members may move to be appointed lead plaintiff within sixty days of the publication of notice of the first action has been filed. 15 U.S.C. §§ 77z-1(a)(3)(A), 78u-4(a)(3)(A). A proposed lead plaintiff must "file a sworn certified statement with the complaint stating that he or she reviewed and authorized the filing of the complaint; did not purchase the securities at the direction of counsel or in order to participate in a lawsuit; and is willing to serve as the lead plaintiff on behalf of the class," as well as "identify all of his or her transactions in the securities covered by the class period, and any other lawsuits in which the plaintiff has sought to serve as lead plaintiff in the last three years." *In re Host America Corp. Securities Litig.*, 236 F.R.D. at 104. All of the above have timely filed certifications and properly disclosed their relevant transactions.

The Court then will determine a lead plaintiff based on the factors outlined in the PSLRA. *Schaffer*, 2016 WL 3566238, at *1 (S.D.N.Y. 2016) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)); *see also Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("The purpose of the PSLRA was to prevent 'lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel.'" (quoting *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998))).

The PSLRA establishes a rebuttable presumption that the lead plaintiff, or the "most adequate plaintiff" is the one who:

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 81 (2d Cir. 2004) ("Two objective factors inform the district court's appointment decision: the plaintiffs' respective financial stakes in the relief sought by the class, and their ability to satisfy the requirements of Rule 23.").

To determine the party with the largest financial interest, the Court may consider: "(1) [t]he number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *In re Milestone Scientific Securities Litig.*, 183 F.R.D. 404, 413 (D. N.J. 1998). Or alternatively, the Court may "equate[] 'largest financial interest' with potential recovery." *In re Critical Path Inc. Securities Litig.*, 156 F. Supp. 2d at 1107 (citing *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999)). The second approach "assumes that the 'fraud premium,' which is the amount by which the stock is inflated because of the alleged misrepresentations, stayed constant throughout the class period," and "the number of net shares purchased during the class period is determinative." *Id.* at 1107-08 (adopting second method, but supplementing it "with in/out losses, i.e., losses suffered by selling shares during the class period").

The presumption that the plaintiff with the largest financial stake is the most adequate plaintiff may be rebutted "only by proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of

the class; or (bb) is subject to unique defenses that render such plaintiff incapable of inadequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Under Rule 23, there are four requirements for the certification of a class action lawsuit:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Of these four requirements, however, "only adequacy and typicality come into play when appointing a lead plaintiff under the PSLRA." *In re Host America Corp. Securities Litig.*, 236 F.R.D. at 105  (citing *Constance Sczesny Trust v. KPMG, LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004)). The PSLRA did not alter "the preexisting standard by which class representatives are evaluated under Rule 23." *Hevesi*, 366 F.3d at 83.

No "searching inquiry" of whether a lead plaintiff satisfies the requirements of Rule 23, however, is required at this stage under the PSLRA. *In re Critical Path, Inc. Securities Litig.*, 156 F. Supp. 2d 1102, 1110 (N.D. Cal. 2001) ("The doctrine against conducting a searching inquiry under Rule 23 at this stage is best understood as a means of speeding the litigation along, and thus encouraging efficiency, rather than a means of avoiding problems that may affect the class later on in the lawsuit.") (citing 15 U.S.C. § 78u-4(a)(3)(b)(iii)(I)(cc)). Still, "the fact that a searching inquiry under Rule 23 is not required at this stage of the litigation does not mean that the Court must pay mere lip service to the requirement of the statute that a prospective lead plaintiff satisf[y] the requirements of Rule 23." *In re Terayon Communicatoins Systems, Inc. Securities Litig.*, 2004 WL 413227 (N.D. Cal. 2004); *Faig v. BioScrip, Inc.*, 2013 WL 6705045,

at *3 (S.D.N.Y. Dec. 19, 2013) ("[A]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

As discussed above, only two parties remain with pending motions to be appointed lead plaintiffs: FTR and Arkansas Teacher and Carlos Lagomarsino.[2] ECF Nos. 44, 50. First, having alleged that they suffered an approximately $8 million loss and provided sufficient documentation regarding this allegation, Arkansas Teacher and Mr. Lagomarsino are the presumptive lead plaintiffs. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I); *see also In re Host America Corp. Securities Litig.*, 236 F.R.D. at 105 ("[T]he Court should consider the motions sequentially, from greatest to smallest loss, applying the presumption that the plaintiff with the greatest loss should be the lead plaintiff, unless and until that presumption is rebutted by a showing that that plaintiff does not meet the Rule 23 criteria."); *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014) ("The most important factor is financial loss."). Arkansas Teacher has the largest financial interest in the litigation, regardless of the approach used to calculate the largest financial interest, a point no party contests. *See, e.g.*, FTR Opp. Br., ECF No. 64 at 3-4 (arguing that Arkansas Teacher is presumptively barred and Arkansas Teacher and Mr. Lagomarsino are not typical or adequate plaintiffs, but not because

---

[2] In its motion withdrawing his own motion to be appointed lead plaintiff, Gene R. Wills supported the Arkansas Teacher Retirement System as lead plaintiff. *Bray*, 17-cv-1617, ECF No. 28. Stephen Doo and Scott Bugbee also supported the Arkansas Teacher Retirement System as lead plaintiff in their Notice of Non-Opposition. ECF No. 53. ATM Four, while not conceding that Arkansas Teacher Retirement System should be appointed lead plaintiff, has not filed a motion opposing its appointment and the Court therefore will no longer entertain its motion. At least one court has concluded that parties that "neglected to file opposition motions . . . thus apparently are no longer pursuing their motions." *In re Host America Corp. Sec. Litig.*, 236 F.R.D. at 103. While this decision is not binding on this Court, the underlying reasoning is sound: by failing to oppose the motions of the other parties, ATM Four has not allowed the Court, much less the other parties, an opportunity to understand the continuing basis for its motion, in comparison to the other motions.

they did not have the largest financial stake); Wills Notice of Non-Opposition, ECF No. 28

(supporting Arkansas Teacher as lead plaintiff); Doo & Bugbee Notice of Non-Opposition, ECF

No. 53 (same).

Arkansas Teacher and Mr. Lagomarsino therefore are presumptively the lead plaintiffs, a

presumption that can be rebutted only with "exacting proof" that they do not meet the criteria of

Rule 23—that is, that they are atypical or inadequate. *In re Facebook, Inc., IPO Sec. &*

*Derivative Litig.*, 288 F.R.D. at 39. FTR has not established with exacting proof that Arkansas

Teacher and Mr. Lagomarsino are atypical or inadequate.

First, FTR argues that Mr. Lagomarsino made unusual and suspect trades on Frontier

stock, in numbers too large and prices too consistent to be typical. The Court finds that, because

Mr. Lagomarsino provided a certification from his investor and attested himself to the

transaction, he has provided sufficient evidence to allay the concerns raised by FTR's brief. *See*

Ark. Sur-Reply Ex. A (Lagomarsino Decl.), Ex. B (Lagomarsino Certification), Ex. C (Corrected

Transactions), ECF No. 88. Although FTR argues that the initial submission warrants a finding

of inadequacy, the Court does not find that this corrected certification constitutes "exacting

proof" of inadequacy. *See, e.g.*, *Hansen v. Ferrellgas Partners, L.P.*, 2017 WL 281742, at *5

(S.D.N.Y. Jan 19, 2017) (noting that "the Court would be extremely reluctant to impose a rule

that would force lead plaintiff movants to choose between leaving mistakes in their filings

uncorrected or correcting the mistake and being summarily disqualified" and finding that

movant's "correction of his certification [fell] well short of 'proof'" of inadequacy); *Khunt v.

Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538-39 (S.D.N.Y. 2015) ("Even if there were

an error in the certification . . . 'minor or inadvertent mistakes made in a sworn certification do

not strike at the heart of Rule 23's adequacy requirement.'" (quoting *Niederklein v. PCS Edventures!.com, Inc.*, 2011 WL 759553, at *11 (D. Idaho Feb. 24, 2011))).

Second, FTR points out that Arkansas Teacher is an institutional investor. The professional plaintiff provision in the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(vi), restricts the number of times a person may serve as lead plaintiff in a securities class to five times in a three-year period. Many courts, however, have found that the professional plaintiff provision of the PSLRA does not apply to institutional investors like Arkansas Teacher. *See In re Extreme Networks Inc. Sec. Litig.*, 2016 WL 3519283, at *5  (N.D. Cal June 28, 2016) (noting that cases in that district in the past fifteen years "all have held hat § 78u-4(a)(3)(B)(vi) is not a bar to institutional investors—and with good reason"); *Reitan*, 68 F. Supp. 3d at 396 (citing cases supporting assertion that many courts prefer institutional investors as lead plaintiffs); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) ("[M]any courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs."); *see also* H.R. Conf. Rep. No. 104–369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); S. Rep. No. 104–98, at 10–11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff.'"). The Court agrees with Arkansas Teacher, and the many cases recognizing that the legislative history of the PSLRA indicates that Congress intended to encourage institutional investors with the largest stake in the litigation to steer the litigation. In addition, the professional

plaintiff provision leaves discretion to the district court to appoint a lead plaintiff "consistent with the purposes of this section"; the decision to bar a plaintiff that has served as a lead plaintiff in more than five securities class actions in three years thus remains in the discretion of the district court. 15 U.S.C. § 78u-4(a)(3)(B)(vi).

In this case, the Court finds that the financial stakes analysis establishes Arkansas Teacher and Mr. Lagomarison as the presumptive lead plaintiffs, and the fact that Arkansas Teacher is an institutional investor is insufficient to overcome the rebuttable presumption that Arkansas Teacher is the most adequate plaintiff. Arkansas Teacher and Mr. Lagomarison's motion to be appointed lead plaintiffs in this case therefore is granted.

### B.      Motion to Approve Lead Counsel

"Once a lead plaintiff is chosen, the PSLRA requires that the 'most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.'" *In re Host America*, 236 F.R.D. at 105 (quoting 15 U.S.C. § 77z-1(a)(3)(B)(v)). The Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice of counsel if necessary "to protect the interests of the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(aa), 78u-4(a)(3)(B)(iii)(II)(aa); *In re Host America*, 236 F.R.D. at 105 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 274 (3d Cir. 2001)).

Arkansas Teacher has proposed Bernstein Litowitz as its Lead Counsel, subject to the Court's approval. Arkansas Teacher argues that Bernstein Litowitz "is among the preeminent securities class action law firms in the country and is highly experienced in prosecuting securities cases and managing complex litigation efficiently." Ark. Memo. in Opp. at 13. Furthermore, none of the briefs that challenge Arkansas Teacher as the lead plaintiff suggest that Bernstein Litowitz will be inadequate lead counsel. The Court finds no reason here to reject Bernstein

24

Litowitz, and defers to Plaintiffs' choice of representation. *See In re Surebeam Corp. Sec. Litig*, 2004 WL 5159061, at *5 (S.D. Cal. Jan. 5, 2004) (deferring to lead plaintiff's choice in counsel after finding that "there is no reason to believe that any of the law firms vying for lead counsel are not qualified or otherwise generally able to conduct this case.").

## IV.     CONCLUSION

For the foregoing reasons, the motions to consolidate the following cases are

**GRANTED**: *Rozenberg v. Frontier Communications Corporation*, 17-cv-1672-MPS; *St. Lucie County Fire District Firefighters' Pension Trust Fund*, 17-cv-1825-VAB; and *Morrow v. Frontier Communications Corp.*, 17-cv-1759-VAB.

In addition, Arkansas Teacher and Mr. Lagomarsino's motion to be appointed lead plaintiffs is **GRANTED**, and their motion for approval of Bernstein Litowitz as lead counsel is also **GRANTED**.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of January, 2018.


/s/ Victor A. Bolden
THE HONORABLE VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE