**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| IN RE FRONTIER COMMUNICATIONS CORPORATION STOCKHOLDERS LITIGATION | No. 3:17-cv-01617-VAB |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION**
**FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 4

I.  PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF
    ATTORNEYS' FEES FROM THE COMMON FUND ................................................. 4

II. THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE
    COMMON FUND ........................................................................................................ 5

III. THE REQUESTED FEE IS REASONABLE UNDER EITHER THE
     PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD ............ 6

     A.  The Requested Fee Is Reasonable Under the Percentage-of-the-Fund
         Method ................................................................................................................ 6

     B.  The Requested Fee Is Reasonable Under the Lodestar Method ........................... 8

IV.  THE *GOLDBERGER* FACTORS CONFIRM THAT THE REQUESTED FEE IS
     FAIR AND REASONABLE ......................................................................................... 10

     A.  The Time and Labor Expended by Lead Counsel Support the Requested
         Fee ...................................................................................................................... 10

     B.  The Risks of the Litigation Support the Requested Fee ...................................... 12

     C.  The Magnitude and Complexity of the Action Support the Requested Fee ......... 15

     D.  The Quality of Lead Counsel's Representation Supports the Requested
         Fee ...................................................................................................................... 16

     E.  The Requested Fee in Relation to the Settlement ................................................ 16

     F.  Public Policy Considerations Support the Requested Fee ................................... 17

     G.  The Reaction of the Settlement Class to Date Supports the Requested Fee ......... 18

V.   THE FEE REQUEST IS SUPPORTED BY LEAD PLAINTIFFS ................................. 18

VI.  LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
     NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ................. 19

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 F. App'x 9 (2d Cir.
  2008) ...................................................................................................................................16

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................................12

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*,
  148 F. Supp. 3d 303 (S.D.N.Y. 2015)......................................................................................7

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)..........................................................................................................5, 17

*Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  2012 WL 2064907 (S.D.N.Y. June 7, 2012) ...........................................................................7

*Blum v. Stenson*,
  465 U.S. 886 (1984)................................................................................................................8

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)................................................................................................................4

*Cen. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
  Care, LLC*,
  504 F.3d 229 (2d Cir. 2007)....................................................................................................7

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) .......................................................................19

*Citiline Holdings, Inc. v. iStar Fin., Inc.*,
  No. 1:08-cv-03612-RJS, slip op. (S.D.N.Y. Apr. 5, 2013)......................................................7

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)..................................................................................................12

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) .........................................................................15

*Collins v. Olin Corp.*,
  2010 WL 1677764 (D. Conn. Apr. 21, 2010)..........................................................................6

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ............................................................... passim

*Cornwell v. Credit Suisse Grp.*,
    2011 WL 13263367 (S.D.N.Y. July 18, 2011) ...................................................7, 10

*In re Deutsche Telekom AG Sec. Litig.*,
    2005 WL 7984326 (S.D.N.Y. June 14, 2005) ........................................................10

*Esslinger v. HSBC Bank Nev., N.A.*,
    2012 WL 5866074 (E.D. Pa. Nov. 20, 2012) ...........................................................8

*In re Evoqua Water Techs. Corp. Sec. Litig.*,
    Master File No. 1:18-cv-10320-JPC, slip op. (S.D.N.Y. Nov. 1, 2021).....................7

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)............................................................7

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018)................................................................6, 19

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .................................................. passim

*Fogarazzo v. Lehman Bros.*,
    2011 WL 671745 (S.D.N.Y. Feb. 23, 2011).........................................................15

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................16

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000).......................................................................4, 6, 8, 10

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................9

*Hicks v. Morgan Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................................5, 17

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964).............................................................................................5

*Kiefer v. Moran Foods, LLC*,
    2014 WL 3882504 (D. Conn. Aug. 5, 2014) ........................................................19

*In re L.G. Philips LCD Co. Sec. Litig.*,
    No. 1:07-cv-00909-RJS, slip op. (S.D.N.Y. Mar. 17, 2011) ...................................7

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................10

*In re Marsh ERISA Litig.*,
     265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................15

*McGuire v. Dendreon Corp.*,
     No. 2:07-cv-00800-MJP, slip op. (W.D. Wash. Dec. 20, 2010)..............................................8

*Menkes v. Stolt-Nielsen S.A.*,
     2011 WL 13234815 (D. Conn. Jan. 25, 2011)...............................................................6

*Missouri v. Jenkins*,
     491 U.S. 274 (1989)...............................................................................8, 9

*In re Priceline.com, Inc. Sec. Litig.*,
     2007 WL 2115592 (D. Conn. July 20, 2007) ..............................................4, 5, 7, 17

*Public Pension Fund Grp. v. KV Pharm. Co.*,
     No. 4:08-cv1859, slip op. (E.D. Mo. Apr. 23, 2014)...............................................8

*In re Sadia S.A. Sec. Litig.*,
     2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ...............................................7

*Savoie v. Merchants Bank*,
     166 F.3d 456 (2d Cir. 1999)...............................................................6

*Sheet Metal Workers Local 32 Pension Fund v. Terex Corp., et al.*,
     No. 3:09-cv-02083-RNC, slip op. (D. Conn. July 30, 2019)...............................................6

*In re Signet Jewelers Ltd. Secs. Litig.*,
     2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...............................................7

*In re Sturm, Ruger & Co., Inc. Sec. Litig.*,
     2012 WL 3589610 (D. Conn. Aug. 20, 2012) ..............................................5, 15, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
     551 U.S. 308 (2007)...............................................................5, 17

*In re United Rentals, Inc. Sec. Litig.*,
     Master File No. 3:04-cv-1615 (CFD), slip op. (D. Conn. May 26, 2009) ...........................7, 9

*In re Veeco Instruments Inc. Sec. Litig.*,
     2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)..............................................5, 16, 19

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
     2017 WL 4167440 (E.D. Pa. Sep. 20, 2017) ...............................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
     396 F.3d 96 (2d Cir. 2005)...............................................................6, 9

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
   2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)..........................................................................9

Court-appointed Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), respectfully submit this memorandum of law in support of its motion, on behalf of all Plaintiffs' Counsel,[1] for (1) an award of attorneys' fees in the amount of 25% of the Settlement Fund and (2) payment of $267,688.00 in Litigation Expenses that were reasonably incurred by Plaintiffs' Counsel in prosecuting and resolving the Action.[2]

## PRELIMINARY STATEMENT

The efforts of Plaintiffs' Counsel have allowed Lead Plaintiffs to achieve a Settlement of the Action for $15.5 million for the benefit of the Settlement Class. The proposed Settlement is a favorable result considering the significant challenges that Lead Plaintiffs faced in prevailing in this litigation, including challenges in proving that Defendants' statements were materially false or misleading and made with scienter, and in establishing loss causation and damages. The Settlement provides a substantial and certain recovery to Settlement Class Members and eliminates these significant risks. It also eliminates the substantial delays and expenses that would result from the years of continued litigation that would be needed to secure a litigated recovery for Lead Plaintiffs and the Settlement Class.

Plaintiffs' Counsel dedicated a total of more than 6,200 hours of attorney and other professional staff time over the past four years to bring the Action to this conclusion and have not yet received any compensation for these efforts. ¶¶114-15. As detailed in the accompanying

---

[1] "Plaintiffs' Counsel" are: Lead Counsel BLB&G and Liaison Counsel Motley Rice LLC.

[2] All capitalized terms not otherwise defined have the meanings set forth in the Stipulation and Agreement of Settlement, dated December 23, 2021 (ECF No. 192-2) (the "Stipulation") or in the Declaration of Katherine M. Sinderson in Support of (A) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (B) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Sinderson Declaration" or "Sinderson Decl."), filed herewith. Citations to "¶__" in this memorandum refer to paragraphs in the Sinderson Declaration. Unless otherwise noted, citations and internal punctuation are omitted, and all emphasis is added.

Sinderson Declaration,[3] Plaintiffs' Counsel's efforts included (i) conducting a comprehensive investigation of the claims asserted in the Action, which involved interviews of 124 former employees of Frontier, and a thorough review of public information such as filings with the U.S. Securities and Exchange Commission ("SEC"), analyst reports, conference call transcripts, and news articles; (ii) researching and drafting a detailed consolidated complaint (the "CAC") based on Lead Counsel's investigation; (iii) briefing and arguing in opposition to Defendants' motion to dismiss the CAC; (iv) continuing to investigate the alleged fraud and drafting a detailed proposed amended complaint (the "PAC" or "Complaint"); (v) briefing Lead Plaintiffs' motion for leave to amend the complaint; (vi) briefing Lead Plaintiffs' appeal before the Second Circuit Court of Appeals (the "Appeal"); and (vi) engaging in months of arm's-length settlement negotiations with counsel for Defendants. ¶¶13-58.

From the outset of this litigation, Plaintiffs' Counsel faced numerous challenges to proving liability and damages that posed a serious risk of no recovery for the Settlement Class. ¶¶70-78. Lead Plaintiffs faced substantial challenges in establishing that Defendants' statements during the Class Period were materially false or misleading and made with scienter. Indeed, this risk was largely realized at the motion to dismiss stage of this case when the Court dismissed all of Lead Plaintiffs' allegations except for a handful of alleged false and misleading statements made by Defendants that fewer than 1% of the millions of customers acquired by Frontier in the CTF Acquisition suffered outages following the acquisition (the "1% Statements"). Although Lead

---

[3] The Sinderson Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to that Declaration for a fuller description of, *inter alia:* the history of the Action (¶¶7-60); the nature of the claims asserted (¶¶16-17); the negotiations leading to the Settlement (¶¶51-58); the risks and uncertainties of continued litigation (¶¶62-82); and a description of the services Lead Counsel provided for the benefit of the Settlement Class (¶¶7-61).

Plaintiffs appealed the Court's ruling dismissing the Action, it was far from certain that they would succeed on the Appeal and, even if they had, only the 1% Statements remained viable, and as against only a single Executive Defendant, Frontier's former CEO Daniel McCarthy. Moreover, throughout the entire litigation, Lead Plaintiffs faced substantial risk in establishing loss causation, as evidenced by the fact that the Court had already dismissed Lead Plaintiffs' claims on loss causation grounds on two occasions, on the basis that the corrective disclosures alleged in the Complaint did not, in fact, reveal the truth about the 1% Statements and/or cause investors' losses. Lead Counsel brought this Action on a fully contingent basis. Thus, all these litigation risks meant a substantial possibility that Plaintiffs' Counsel might receive no compensation for the time they spent pursuing the Action.

Furthermore, this result is particularly noteworthy considering Frontier's bankruptcy reorganization, which compounded the substantial litigation risks already present in this case. Even though Frontier's bankruptcy reorganization significantly imperiled the chances of Lead Plaintiffs collecting on any judgment in the Action, Lead Counsel devoted substantial time and resources to protecting the interests of the Settlement Class, and successfully obtained a favorable result for the benefit of Settlement Class Members.

As compensation for Plaintiffs' Counsel's efforts and for the risks of non-payment they faced in bringing the Action on a contingent basis, Lead Counsel seeks an award of 25% of the Settlement Fund. As discussed below, the 25% fee request is consistent with percentage fees that have been awarded in securities class actions in the Second Circuit with recoveries of comparable size. In addition, the lodestar cross-check also confirms the reasonableness of the fee, with the requested fee representing a very slight multiplier of just 1.05 of Plaintiffs' Counsel's lodestar.

Lead Plaintiffs support the fee request, based on their active supervision of the work of counsel. *See* Declaration of Rod Graves, submitted on behalf of ATRS (Ex. 1) at ¶9, and Declaration of Carlos Lagomarsino (Ex. 2) at ¶7. In addition, while the deadline set by the Court for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no formal objections to the requests for fees and expenses have been received. ¶¶94, 118, 128.[4]

In light of the recovery obtained, the time and effort devoted by Plaintiffs' Counsel, the wholly contingent nature of the representation, and the considerable risks that counsel undertook, Lead Counsel respectfully submits that the requested fee award is reasonable and should be approved by the Court. In addition, as further discussed below, the Litigation Expenses for which Lead Counsel seeks payment were reasonably necessary to the successful prosecution of actions of this type, and should also be awarded in full.

## ARGUMENT

## I.   PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re Priceline.com, Inc. Sec. Litig.*, , 2007 WL 2115592, at *4 (D. Conn. July 20, 2007). Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore "to discourage future

---

[4] The deadline for the submission of objections is April 19, 2022. Should any objections be received, Lead Counsel will address them in its reply papers, due on or before May 3, 2022.

misconduct of a similar nature." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010); *see In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

The Supreme Court has repeatedly emphasized that private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'") (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). Compensating plaintiffs' counsel for bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005); *see also In re Sturm, Ruger & Co., Inc. Sec. Litig.*, 2012 WL 3589610, at *13 (D. Conn. Aug. 20, 2012) ("Courts have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis pursuant to the federal securities laws on behalf of those who otherwise could not afford to prosecute."); *Priceline.com*, 2007 WL 2115592, at *5 ("The fee fairly compensates competent counsel in a complex securities case and helps to perpetuate the availability of skilled counsel for future cases of this nature.").

## II.   THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained. The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of

judicial resources." *Goldberger*, 209 F.3d at 48-50 (holding that either the percentage of fund method or lodestar method may be used to determine appropriate attorneys' fees); *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). More recently, the Second Circuit has reiterated its approval of the percentage method, stating that it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation,'" and has noted that the "trend in this Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Collins v. Olin Corp.*, 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010) ("[t]he Second Circuit has expressed a preference for the percentage method of calculating attorneys' fees, noting that such an approach 'aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation'") (internal punctuation omitted); *Menkes v. Stolt-Nielsen S.A.*, 2011 WL 13234815, at *4 (D. Conn. Jan. 25, 2011); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 416 (S.D.N.Y. 2018); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010).

## III.  THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD

Here, the requested fee award—25% of the Settlement Fund and a lodestar multiplier of just 1.05—is well supported under both the "percentage" and "lodestar" methods.

### A.  The Requested Fee Is Reasonable Under the Percentage-of-the-Fund Method

The 25% attorney fee requested by Lead Counsel is well within the range of percentage fees that have been awarded in the Second Circuit in comparable class actions. *See, e.g.*, *Sheet Metal Workers Local 32 Pension Fund v. Terex Corp., et al.*, No. 3:09-cv-02083-RNC, slip op. at

1-3 (D. Conn. July 30, 2019), ECF No. 139 (awarding 31% of $10 million settlement; 1.43 multiplier) (Ex. 7); *Priceline.com, Inc.*, 2007 WL 2115592, at *4-6 (awarding 30% of $80 million settlement; 1.98 multiplier); *In re United Rentals, Inc. Sec. Litig.*, Master File No. 3:04-cv-1615 (CFD), slip op. at 2 (D. Conn. May 26, 2009), ECF Nos. 141, 150 (awarding 25% of $27.5 million settlement; 4.5 multiplier) (Ex. 8); *In re Evoqua Water Techs. Corp. Sec. Litig.*, Master File No. 1:18-cv-10320-JPC, slip op. at 2 (S.D.N.Y. Nov. 1, 2021), ECF No. 152 (awarding 25% of $16.65 million settlement) (Ex. 9); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *9-12 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement; 1.02 multiplier); *Citiline Holdings, Inc. v. iStar Fin.*, *Inc.*, No. 1:08-cv-03612-RJS, slip op. at 1 (S.D.N.Y. Apr. 5, 2013), ECF Nos. 116, 127 (awarding 30% of $29 million settlement; 1.4 multiplier) (Ex. 10); *In re Sadia S.A. Sec. Litig.*, 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011) (awarding 30% of $27 million settlement; 1.04 multiplier); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *1-2 (S.D.N.Y. July 18, 2011) (awarding 27.5% of $70 million settlement; 4.7 multiplier); *In re L.G. Philips LCD Co. Sec. Litig.*, No. 1:07-cv-00909-RJS, slip op. at 1 (S.D.N.Y. Mar. 17, 2011), ECF Nos. 69, 82 (awarding 30% of $18 million settlement; 3.17 multiplier) (Ex. 11); *see also Cen. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 239, 249 (2d Cir. 2007) (affirming district court's award of 30% of $42.5 million settlement fund, representing 1.79 multiplier).[5]

---

[5] Indeed, percentage fees of this amount and higher have often been awarded in much larger settlements in the Second Circuit. *See, e.g, In re Signet Jewelers Ltd. Secs. Litig.*, 2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (awarding 25% of $240 million settlement fund net of expenses); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 148 F. Supp. 3d 303, 305 (S.D.N.Y. 2015) (awarding 25% of $180 million settlement); *Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2012 WL 2064907, at *3 (S.D.N.Y. June 7, 2012) (awarding 25% of $150 million settlement); *Comverse*, 2010 WL 2653354, at *6 (awarding 25% of $225 million settlement).

The requested 25% fee is also well within the range of percentage fee awards that have been granted in comparable securities class actions in other Circuits. *See, e.g.*, *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2017 WL 4167440, at *7, 9 (E.D. Pa. Sep. 20, 2017) (awarding 25% of $30 million settlement); *Public Pension Fund Grp. v. KV Pharm. Co.*, No. 4:08-cv1859, slip op. at 2 (E.D. Mo. Apr. 23, 2014), ECF No. 199 (awarding 30% of $12.8 million settlement; 1.6 multiplier) (Ex. 12); *Esslinger v. HSBC Bank Nev., N.A.*, 2012 WL 5866074, at *12, *16 (E.D. Pa. Nov. 20, 2012) (awarding 30% of $23.5 million settlement; 1.7 multiplier); *McGuire v. Dendreon Corp.*, No. 2:07-cv-00800-MJP, slip op. at 3-4 (W.D. Wash. Dec. 20, 2010), ECF Nos. 220, 235 (awarding 25% of $16.5 million settlement; 2.55 multiplier) (Ex. 13).

Further, the Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and typically in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

In sum, the 25% fee requested here is well within the range of fees awarded on a percentage basis in comparable actions and is reasonable under the percentage-of-the-fund method.

**B.    The Requested Fee Is Reasonable Under the Lodestar Method**

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, district courts may cross-check the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50.

Here, Plaintiffs' Counsel spent a total of 6,200.40 hours of attorney and other professional support time prosecuting the Action for the benefit of the Settlement Class. ¶110. Plaintiffs' Counsel's collective lodestar, derived by multiplying the hours spent by each attorney and paraprofessional by their current hourly rates, is $3,695,130.00.[6] *See id.* The requested fee of $3,875,000 (before interest), therefore represents a multiplier of 1.05 of the total lodestar.

This "multiplier" is significantly below the range of multipliers commonly awarded in securities class actions and other comparable litigations. Indeed, in cases of this nature, fees representing ***multiples*** of the attorneys' lodestar are regularly awarded to reflect the contingency fee risk and other relevant factors. *See FLAG Telecom*, 2010 WL 4537550, at *26 ("a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors"); *Comverse*, 2010 WL 2653354, at *5 ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

In particular, in complex contingent litigation, positive lodestar multipliers between two and five are commonly awarded. *See, e.g., Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *In re United Rentals, Inc. Sec. Litig.*, No. 3:04-cv-1615, slip op. at 2 (D. Conn. May 26, 2009), ECF Nos. 141, 150 (awarding fee representing a 4.5 multiplier) (Ex. 8); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*,2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017)

---

[6] The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See Jenkins*, 491 U.S. at 284; *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ("[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation.").

(awarding fee representing a 3.14 multiplier); *Comverse*, 2010 WL 2653354, at *5 (2.78 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (3.96 multiplier); *Cornwell*, 2011 WL 13263367, at *2 (4.7 multiplier); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

In sum, Lead Counsel's requested 25% fee award is well within the range of what courts in this Circuit regularly award in class actions such as this one when calculated as a percentage of the fund, and significantly below what is customary in relation to Lead Counsel's lodestar. Moreover, as discussed below, each of the factors established for the review of attorneys' fee awards by the Second Circuit in *Goldberger* also strongly supports a finding that the requested fee is reasonable.

## IV.   THE *GOLDBERGER* FACTORS CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, further demonstrates that the fee requested by Lead Counsel is reasonable.

### A.   The Time and Labor Expended by Lead Counsel Support the Requested Fee

The substantial time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement plainly support the requested fee. The accompanying Sinderson Declaration details the efforts of Lead Counsel in prosecuting Lead Plaintiffs' claims over the

course of this more than four-year litigation effort. As set forth in greater detail in the Sinderson

Declaration, Lead Counsel, among other things:

- conducted an extensive factual and legal investigation that included, among other things, review and analysis of: (i) Frontier's public filings with the SEC; (ii) research reports by securities and financial analysts; (iii) transcripts of Frontier's conference calls with analysts and investors; (iv) Frontier's presentations, press releases, and reports; (v) news and media reports concerning Frontier and other facts related to this action, including Frontier's prior acquisitions; (vi) documents filed in and testimony given by Frontier's executives in regulatory proceedings; (vii) price and volume data for Frontier securities; and (viii) information from consultations with experts;

- identified, located, and interviewed 124 former Frontier employees believed to potentially have information about the claims at issue in the Action (¶¶3, 14);

- researched and drafted the 144-page Consolidated Class Action Complaint (the "CAC") based on this investigation, asserting claims under the Securities Exchange Act of 1934 (the "Exchange Act") and Securities Act of 1933 (the "Securities Act") (¶¶13-17);

- researched and briefed a 40-page opposition to Defendants' motion to dismiss the CAC (¶¶18-21);

- participated in a two-hour oral argument on Defendants' motion to dismiss (¶22);

- researched and fully briefed Lead Plaintiffs' motion for leave to amend the CAC, which included a detailed 86-page proposed amended complaint asserting claims under the Exchange Act (the "PAC" or the "Complaint") (¶¶24-33);

- researched and briefed a motion before the Second Circuit Court of Appeals seeking to partially lift Frontier's automatic bankruptcy stay (¶¶ 37-41);

- researched and fully briefed Lead Plaintiffs' appeal to the Second Circuit Court of Appeals seeking review of the Court's order denying the motion for leave to amend the CAC, including preparations for oral argument that was calendared at the time the Settlement was achieved (¶¶45-50);

- retained and consulted extensively with an expert on market efficiency and class-wide damages to assist in the prosecution of this Action, and, after the Settlement was reached, utilized expert advice to develop the Plan of Allocation (¶¶15, 61);

- retained and consulted extensively with an experienced bankruptcy counsel to protect the Settlement Class's interests in Frontier's bankruptcy proceedings (¶¶81, 124); and

- engaged in extensive settlement negotiations with Defendants' Counsel (¶¶51-53, 58).

As noted above, Plaintiffs' Counsel expended 6,200.40 hours prosecuting this Action with a collective total lodestar value of $3,695,130.00. ¶110. Throughout the litigation, Plaintiffs' Counsel staffed the matter efficiently to avoid unnecessary duplication of effort. The time and effort devoted to this case by Plaintiffs' Counsel was critical in obtaining the favorable result achieved by the Settlement, and the significant amount of time spent (as well as the minimal lodestar multiplier discussed above) confirms that the 25% fee request here is reasonable in relation to the time spent and work performed.

### B.    The Risks of the Litigation Support the Requested Fee

The Second Circuit has recognized that the risks associated with a case undertaken on a contingent fee basis is another important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Comverse*, 2010 WL 2653354, at *5; *see also In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award").

Plaintiffs' Counsel have not received any compensation to date, assuming entirely the risk of no recovery while expending significant attorney time and advancing considerable costs. At every stage of prosecuting this case, Plaintiffs' Counsel faced substantial, case-ending risks. Indeed, at the time the Settlement was reached, the case was on appeal of this Court's order

denying Lead Plaintiffs' motion for leave to amend the PAC and dismissing the case with prejudice, and there was a significant risk that Plaintiffs' Counsel would have received no fee at all if the Appeal were unsuccessful. Further, even if Lead Plaintiffs prevailed on the Appeal, significant additional case-ending risks remained, as Lead Plaintiffs would have undoubtedly faced a renewed motion to dismiss the Complaint, challenges to class certification, and Defendants' anticipated motion for summary judgment, as well as the risks attendant to a trial of the Action and post-trial motions and appeals.

As discussed in greater detail in the Sinderson Declaration and in the memorandum of law in support of the Settlement, from the outset of the litigation there were substantial risks here with respect to establishing both liability and damages. *See* ¶¶71-78. For example, Lead Plaintiffs faced significant hurdles in establishing that Defendants' statements were materially false and misleading when made. While several state government entities investigated Frontier following the CTF Acquisition, neither the SEC nor any other governmental entity formally investigated or asserted a parallel enforcement action concerning the claims asserted in this Action. ¶72. Also, despite Frontier's bankruptcy filing, the Company has never formally restated its financial statements nor otherwise admitted the falsity of any statements. Rather, Defendants have consistently argued that their statements to investors were accurate, and Defendants would likely continue to vigorously contend that their statements were not false or misleading at summary judgment, at trial, and on appeal. *Id.*

Lead Plaintiffs also faced significant risks in establishing Defendants' scienter. For example, Defendants have pointed to their absence of insider stock sales as evidence of a lack of intent to engage in a securities fraud, and that the compensation they did receive for completion of the CTF Acquisition incentivized them to complete the acquisition successfully—not to commit

fraud on investors. ¶73. Also, at the motion to amend stage, the Court credited Lead Plaintiffs' allegations that—given the vast number of customers affected by service outages and the resulting impact of those outages on the Company's revenue—Defendants' 1% Statement was made with scienter, Lead Plaintiffs and Lead Counsel faced the risk that a trier-of-fact may accept one or more of Defendants' scienter arguments and, as result, investors would recover nothing. ¶74.

This case also presented substantial risks to establishing loss causation, to successfully certifying a class, and to proving damages. For example, Lead Plaintiffs faced the real possibility that the Second Circuit would agree with this Court's findings at the motion to amend stage with respect to loss causation and dismiss the case entirely. Indeed, even after finding that falsity and scienter for the 1% Statements were otherwise adequately alleged, this Court—on two occasions— dismissed Lead Plaintiffs' claims on loss causation grounds. ¶¶23(e), 33. Moreover, on appeal, Defendants put forth credible arguments in favor of the Second Circuit's upholding the Court's decision with respect to loss causation, arguing, among other things, that none of the corrective disclosures alleged in the Complaint revealed any new information to the market regarding the number of Frontier's customers that were affected by outages after the CTF Acquisition.  Absent a settlement, the risk remained that the Second Circuit would agree with this Court and investors would recover nothing.

Even if Lead Plaintiffs overcame all the significant risks detailed above—any one of which could have resulted in substantially less or even no recovery for investors—Lead Plaintiffs would face substantial barriers in actually collecting on any judgment considering Frontier's bankruptcy reorganization and the extremely limited resources available for Defendants to satisfy any judgment in this Action.

In the face of the many uncertainties regarding the outcome of the case, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of time and a significant expenditure of litigation expenses with no guarantee of compensation.

Lead Counsel's assumption of this risk on a contingent fee basis strongly supports the reasonableness of the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig*., 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *Sturm, Ruger & Co.*, 2012 WL 3589610, at *12 (finding that litigation risk supported approval of attorneys' fees because attorneys took on securities class action on a contingent basis and there were risks for establishing liability and proving damages, such as challenges to falsity, materiality, and scienter).

### C.      The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action also support the requested fee. Courts have recognized that securities class action litigation is "notably difficult and notoriously uncertain." *FLAG Telecom*, 2010 WL 4537550, at *27; *see also City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014) ("the complex and multifaceted subject matter involved in a securities class action such as this supports the fee request"); *Fogarazzo v. Lehman Bros.*, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("in general, securities actions are highly complex"). This case was certainly no exception. Thus, this factor also supports the fee requested.

**D.      The Quality of Lead Counsel's Representation Supports the Requested Fee**

Lead Counsel submits that the quality of its representation is further evidenced by the quality of the result achieved. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7; *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Here, the Settlement provides a favorable result for the Settlement Class in light of the serious risks of continued litigation, and represents a significant portion of likely recoverable damages. *See* ¶¶62-86. Lead Counsel respectfully submits that the quality of its efforts in the litigation to date, together with its substantial experience in securities class actions and their commitment to this litigation, provided it with the leverage necessary to negotiate the Settlement.

Courts recognize that the quality of the opposing counsel is also a factor in assessing the quality of plaintiffs' counsel's performance. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work"), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, the Company and Executive Defendants hired Mayer Brown LLP, a top defense law firm, to defend them in this lawsuit. ¶113. Despite this formidable opposition, Lead Counsel's thorough investigation, litigation strategy, and successful settlement negotiation efforts positioned it to achieve a favorable recovery for the Settlement Class. Thus, this factor also strongly supports the requested fee.

**E.      The Requested Fee in Relation to the Settlement**

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is

reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Part III, *supra*, the requested 25% fee is well within the range of percentage fees that courts in the Second Circuit have awarded in comparable cases.

F.   **Public Policy Considerations Support the Requested Fee**

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. For example, the Supreme Court has repeatedly stated that such actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs*, 551 U.S. at 313; *see also Bateman Eichler*, 472 U.S. at 310 (such actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'"). Compensating plaintiffs' counsel for the risks they take in bringing such actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks*, 2005 WL 2757792, at *9.

Accordingly, public policy also favors granting the requested fee here. *See In re Sturm, Ruger & Co.*, 2012 WL 3589610, at *13  ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Priceline.com*, 2007 WL 2115592, at *5 (finding that "public policy considerations . . . support the requested fee [when it] will encourage enforcement of the securities laws and support attorneys' decisions to take these types of cases on a contingent fee basis"); *FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

### G.    The Reaction of the Settlement Class to Date Supports the Requested Fee

The reaction of the Settlement Class to date also supports the requested fee. Through April 4, 2022, A.B. Data has disseminated over 737,095 copies of the Notice to potential Settlement Class Members and nominees informing them, among other things, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and up to $500,000 in Litigation Expenses. *See* Ex. A to Ex. 3 (Notice), at 2. While the time to object to the Fee and Expense Application does not expire until April 19, 2022, to date, no formal objections have been received. However, Lead Counsel note that they have received a one-page, anonymous letter from an individual who appears to take issue with Lead Counsel's request for a 25% fee award in this case. *See* Ex. 6. This letter is not a valid objection as it does not satisfy any of the requirements for the submission of objections set forth in the Notice, including by failing to state the individual's name or include documentation establishing that the individual is a member of the Settlement Class with standing to object to the fee application. *See* Notice, ¶66. Moreover, while the letter appears to take issue with Lead Counsel's fee application, it provides no reasoned basis why the requested fee award would not provide reasonable compensation for Plaintiffs' Counsel's efforts and the risks of non-payment they faced in bringing this Action on a contingent basis. For these reasons, this submission should be rejected by the Court.

Should any formal objections be received, Lead Counsel will address them in its reply papers, due on or before May 3, 2022.

## V.    THE FEE REQUEST IS SUPPORTED BY LEAD PLAINTIFFS

Both Lead Plaintiffs have also specifically endorsed the requested 25% fee. *See, e.g.*, ¶106 (citing declarations from each Lead Plaintiff). Lead Plaintiffs, ATRS—an experienced, sophisticated institutional investor that has achieved numerous securities class action recoveries under the PSLRA—and Mr. Lagomarsino, an experienced private equity investor who suffered a

substantial loss on his investments in Frontier Communications Corporation common stock—are classic examples of the sophisticated and financially interested investors that Congress envisioned in enacting the PSLRA. Accordingly, Lead Plaintiffs' endorsement of the fee supports its approval. *See Veeco*, 2007 WL 4115808, at *8 ("Public policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request[.]").

## VI.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's application also includes a request for payment of the Litigation Expenses incurred by Plaintiffs' Counsel, which were reasonable in amount and necessary to the prosecution of the Action. *See* ¶¶120-29. These expenses are properly recovered by counsel. *See Facebook IPO*, 343 F. Supp. 3d at 418 (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation"); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (same); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *Kiefer v. Moran Foods, LLC*, 2014 WL 3882504, at *10 (D. Conn. Aug. 5, 2014) (awarding reimbursement of litigation expenses that including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, and expert fees). As set forth in detail in the Sinderson Declaration, Plaintiffs' Counsel incurred $267,688.00 in Litigation Expenses in the prosecution of the Action. ¶122.

The types of expenses for which Lead Counsel seeks payment are routinely charged to classes in contingent litigation and clients billed by the hour. These expenses include, among others, costs and fees for Lead Plaintiffs' damages experts and bankruptcy counsel, on-line legal

and factual research charges, photocopying charges, and filing fees. ¶¶123-26. Specifically, Lead Plaintiffs' retention of Lowenstein Sandler LLP, counsel specializing in bankruptcy litigation, was critical in this case given the uncertainty that Frontier's complex bankruptcy proceedings added to the Action. Bankruptcy counsel was retained to assist Lead Counsel in protecting Class Members' rights by monitoring Frontier's bankruptcy proceedings and reviewing Lead Plaintiffs' bankruptcy-related filings, including a motion to lift the bankruptcy stay with respect to Defendant McCarthy. ¶124.

Moreover, from the outset, Plaintiffs' Counsel knew that they might not recover any of these expenses or, at the very least, would not recover anything until the litigation was successfully resolved. Thus, Plaintiffs' Counsel were motivated to, and did, take significant steps to minimize these expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action. ¶121.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for Litigation Expenses for all Plaintiffs' Counsel in an amount not to exceed $500,000. The amount of expenses requested, $267,688.00, is substantially below the amount listed in the Notice and, to date, there has also been no objection to the request for expenses. ¶128.

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award (i) total attorneys' fees to Plaintiffs' Counsel of 25% of the Settlement Fund (equal to $3,875,000, plus interest accrued at the same rate as earned by the Settlement Fund); and (ii) $267,688.00 for Plaintiffs' Counsel's Litigation Expenses.

Dated:  April 5, 2022                         Respectfully submitted,

                                              */s/ Katherine M. Sinderson*
                                              **BERNSTEIN LITOWITZ BERGER**

**& GROSSMANN LLP**
Katherine M. Sinderson (phv09412)
Jesse L. Jensen (phv09430)
Kate W. Aufses (phv09437)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 554-1400
Fax: (212) 554-1444
katiem@blbglaw.com
jesse.jensen@blbglaw.com
kate.aufses@blbglaw.com

*Counsel for Lead Plaintiffs Arkansas Teacher
Retirement System and Carlos Lagomarsino, and
Lead Counsel for the Settlement Class*

**MOTLEY RICE LLC**
William H. Narwold (ct 00133)
Mathew P. Jasinski (ct 27520)
One Corporate Center, 17th Floor
20 Church Street
Hartford, Connecticut 06103
Tel.: (860) 882-1675
Fax: (860) 882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

*Liaison Counsel for Lead Plaintiffs Arkansas
Teacher Retirement System and Carlos
Lagomarsino*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 5, 2022 a copy of the foregoing Memorandum of Law in Support of

Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses was filed electronically and

served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-

mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable

to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this

filing through the Court's CM/ECF System.


*/s/ Katherine M. Sinderson*
Katherine M. Sinderson (phv09412)