**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE FRONTIER COMMUNICATIONS CORPORATION STOCKHOLDERS LITIGATION | No. 3:17-cv-01617-VAB |

**ORDER AND FINAL JUDGMENT APPROVING**
**CLASS ACTION SETTLEMENT**

The consolidated securities class action captioned *In re Frontier Communications Corporation Stockholders Litigation*, No. 3:17-cv-01617-VAB (the "Action") is pending in this Court.[1]

Lead Plaintiffs in this Action, Arkansas Teacher Retirement System and Carlos Lagomarsino (collectively, "Lead Plaintiffs"), on behalf of themselves and the Settlement Class (defined below); and defendant Frontier Communications Parent, Inc. (together with its subsidiaries, including Frontier Communications Corporation, "Frontier"),[2] and Defendants Daniel J. McCarthy, John M. Jureller, Ralph Perley McBride, and John Gianukakis (collectively, the "Individual Defendants," and together with Frontier, "Defendants") (Lead Plaintiffs and Defendants, together, the "Parties") have entered into a Stipulation and Agreement of Settlement

---

[1] Unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Stipulation.

[2] Under paragraph 87 of the Findings of Fact, Conclusions of Law, and Order Confirming the Fifth Amended Joint Plan of Reorganization of Frontier Communications Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 1005] ("Confirmation Order"), *In re Frontier Communications Corporation, et al.*, Case No. 20-22476 (RDD), U.S. Bankruptcy Court at the Southern District of New York ("Bankruptcy Court"), Frontier Communications Parent, Inc. is the Debtor/Reorganized Debtor in connection with Securities Litigation claims.

dated December 23, 2021 (the "Stipulation"), Ex. 1 to Mot. for Prelim. Approval of Settlement and Authorization to Disseminate Notice of Settlement, ECF No. 192-2 (Dec. 27, 2021), that provides for a complete dismissal with prejudice of the claims asserted against Defendants in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement").

Lead Counsel seek approval of an award of attorneys' fees equal to twenty-five percent of the Settlement Amount and $267,688.00 for expenses.

An objection was filed to the Settlement and the objector simultaneously filed a motion to lift the discovery stay, to request documents allegedly necessary to determine the Settlement's reasonableness.

Upon reviewing the Stipulation and all of the filings, and following proceedings held in connection with the Settlement, including a fairness hearing held on May 10, 2022, the objector's motion to lift the discovery stay is **DENIED**, Lead Plaintiffs' motion is **GRANTED**, and Lead Counsel's motion is **GRANTED**.

## I.    BACKGROUND

Lead Plaintiffs brought this action against Defendants for violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2), and 77(o); Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a); and Rule 10b-5 of the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5. Consolidated Class Action Compl. for Violations of the Federal Securities Laws ¶¶ 1, 12, ECF No. 134 (Apr. 30, 2018) ("Am. Class Compl."). The lawsuit focuses on Frontier's planned acquisition of Verizon's California, Texas, and Florida wireline operations and related efforts to raise capital in 2015–16. *See e.g.*, Am. Class Compl. ¶ 2.

On January 18, 2018, the Court issued a ruling granting Arkansas Teacher Retirement System and Carlos Lagomarsino's motion to be appointed lead plaintiff and the motion for the Court to approve Lead Plaintiffs' lead counsel, Bernstein Litowitz. Ruling and Order on Mots. to Consolidate, Appoint Lead Pl., and Approve Lead Counsel, ECF No. 99 (Jan. 18, 2018).

On June 29, 2018, Defendants filed a motion to dismiss. Notice of Defs.' Mot. to Dismiss the Consolidated Class Action Compl., ECF No. 143, 146 (June 29, 2018); Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Consolidated Class Action Compl., ECF No. 144 (June 29, 2018) ("Def. Mem. of Law").

On March 8, 2019, the Court dismissed Lead Plaintiffs' Exchange Act and Securities Act claims. Ruling and Order on Mots. to Dismiss, ECF No. 166 (Mar. 8, 2019) ("Ruling and Order"). The Court also granted Lead Plaintiffs leave to file an amended pleading to address deficiencies identified by the Court, to the extent that such deficiencies could be addressed. *Id.* at 2. Lead Plaintiffs then sought to amend the claims concerning Defendants' allegedly false and misleading statements. Proposed Am. Consolidated Class Action Compl. for Violations of the Federal Securities Laws ¶ 1 n.1, ECF No. 167-1 (May 10, 2019).

On March 24, 2020, the Court denied Lead Plaintiffs' motion for leave to amend their Class Action Complaint and, having already granted Lead Plaintiffs leave to amend the original Complaint three times, the Court dismissed the case with prejudice. Ruling and Order on Mot. for Leave to Amend the Compl. at 51, ECF No. 184 (Mar. 24, 2020).

On the same day, Lead Plaintiffs appealed to the United States Court of Appeals for the Second Circuit (the "Second Circuit") the denial of their motion for leave to amend. Notice of Appeal, ECF No. 185 (Apr. 6, 2020).

On April 16, 2020, Frontier filed a Suggestion of Bankruptcy, notifying the Court that

Frontier Communications Corporation and its subsidiaries filed for relief under Chapter 11 of the Bankruptcy Code. Notice of Suggestion of Pendency of Bankruptcy for Frontier Communications Corp., et al., and Automatic Stay of These Proceedings, ECF No. 187 (Apr. 16, 2020).

On October 8, 2021, the Parties filed a joint motion requesting that the Court provide an indicative ruling on whether it would adjudicate the parties' proposed settlement motion upon remand by the Second Circuit. Joint Mot. for the District Ct. to Provide an Indicative Ruling, ECF No. 189 (Oct. 8, 2021).

On October 12, 2021, the Court granted the joint motion and indicated that it would adjudicate the parties' proposed settlement motion upon remand by the Second Circuit. Order, ECF No. 190 (Oct. 12, 2021).

On October 15, 2021, the Second Circuit granted the Parties' joint motion to remand the case "for the limited purpose of allowing the District Court to consider approving the parties' settlement and, if appropriate, to enter a final judgment and other necessary orders related to the settlement." Order of United States Ct. of Appeals, ECF No. 191 (Oct. 15, 2021).

On December 27, 2021, Lead Plaintiffs filed their unopposed motion for preliminary approval of settlement. Mot. for Prelim. Approval of Settlement and Authorization to Disseminate Notice of Settlement, ECF No. 192 (Dec. 27, 2021).

That same day, Lead Plaintiffs filed a Stipulation and Agreement of Settlement, executed on December 23, 2021 by Katherine M. Sinderson of Bernstein, Litowitz, Berger, & Grossmann LLP (who represented the Lead Plaintiffs) and Mattew D. Ingber of Mayer Brown LLP (who represented the Defendants). Stipulation and Agreement of Settlement at 41, ECF No. 192-2 (Dec. 27, 2021) ("Stipulation"). The proposed settlement seeks relief on behalf of the following proposed nationwide Settlement Class:

> [A]ll persons and entities who purchased or otherwise acquired shares of publicly traded common stock and Mandatory Convertible Preferred Stock of Frontier Communications Corporation between April 25, 2016 and October 31, 2017, inclusive . . . and were allegedly damaged thereby.

Stipulation at 14–15. This proposed Settlement Class excluded:

> (i) Defendants and all Former Defendants; (ii) the Immediate Family Members of any Individual Defendant or any Former Defendant; (iii) any person who was an Officer, director, or partner of Frontier or any Former Defendant during the Class Period and any of their Immediate Family Members; (iv) any parent, subsidiary, or affiliate of Frontier or any Former Defendant; (v) any firm, trust, corporation, or other entity in which any Defendant, any Former Defendant, or any other excluded person or entity has, or had during the Class Period, a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded persons or entities. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

*Id*. at 15.

In consideration for the release of claims outlined in the Stipulation, *id*. at 18–19, Defendants agreed to pay or cause to be paid $15,500,000 into a Settlement Fund, *id*. at 14, 18–19. According to the proposed settlement, this Settlement Fund would be used to pay: "(a) any Taxes; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; (d) any attorneys' fees awarded by the Court; and (e) any other costs and fees approved by the Court." *Id*. at 20. Lead Counsel's application for fees and expenses was "not the subject of any agreement between Defendants and Lead Plaintiffs other than what [was] set forth in th[e] Stipulation." *Id*. at 23. The award of attorneys' fees and expenses was "not a necessary term of th[e] Stipulation and [was] not a condition of the Settlement[.]" *Id*. at 24.

On January 18, 2022, the Court issued an order (the "Preliminary Approval Order") which: (a) found, pursuant to Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure, that it (i)

would likely be able to approve the Settlement as fair, reasonable, and adequate under Rule 23(e)(2) and (ii) would likely be able to certify the Settlement Class for purposes of the Settlement; (b) ordered that notice of the proposed Settlement be provided to potential Settlement Class Members; (c) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class or to object to the proposed Settlement; and (d) scheduled a hearing regarding final approval of the Settlement. Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement at 4–7, ECF No. 193 (Jan. 18, 2022).

On February 15, 2022, notice packets were mailed to 190,323 potential Settlement Class Members who were identified in the shareholder records provided by Defendants' Counsel. Suppl. Decl. of Jack Ewashko Regarding: (A) Mailing of the Notice and Claim Form; and (B) Report on Reqs. for Exclusion Received ¶ 3, ECF No. 205 (May 3, 2022) ("Suppl. Ewashko Decl."). The same day, notice packets were also mailed to 4,146 brokers, banks, and other nominees. *Id*. Notice was also provided through the Court's ECF system, since February 15, 2022 on a website dedicated to the Settlement, "through the February 15, 2022 publication on DTCC's Legal Notice System (LENS)," and "through the February 28, 2022 publication of the Summary Notice in *Investor's Business Daily* and over *PR Newswire* pursuant to the terms of the Preliminary Approval Order, which informed readers how to obtain copies of the Notice and Claim Form." Reply Mem. of Law in Further Supp. of Lead Pls.' Mot. for Final Approval of Class Action Settlement and Plan of Allocation at 9, ECF No. 204 (May 3, 2022). According to Lead Plaintiffs, by March 15, 2022, five weeks before the objection deadline, 97.2% of all notice packets had been mailed. *Id*. By April 8, 2022, eight days before the objection deadline, all 755,128 notice packets had been mailed. *Id*. (citing Suppl. Ewashko Decl. ¶ 7).

On April 5, 2022, Lead Counsel filed a motion for attorneys' fees and litigation expenses.

Lead Counsel's Mot. for Attorneys' Fees and Litigation Expenses, ECF No. 196 (Apr. 5, 2022); Mem. of Law in Supp. of Lead Counsel's Mot. for Att'ys' Fees and Litigation Expenses, ECF No. 197 (Apr. 5, 2022) ("Att'ys' Fees Mem.").

On April 14, 2022, the Court received the only objection filed, from Catherine Scott, a member of the proposed Settlement Class. Obj. to the Settlement, the Proposed Plan of Allocation, and Lead Counsel's Mot. for Att'ys' Fees and Litigation Expenses, ECF No. 200 (Apr. 14, 2022) ("Scott Objection"). Ms. Scott objected to the proposed Plan of Allocation and Motion for Attorneys' Fees and Litigation Expenses. Ms. Scott raised a number of concerns: (1) that the notice provided was late; (2) that the settlement is unfair because the relationship between Lead Plaintiffs and Lead Counsel is unclear and the fund was determined without assessing individual investors' relative losses; (3) the notice did not fairly apprise prospective members of the class of the terms of the proposed settlement; (4) the Plan of Allocation sets an incorrect end-date to the look back dates, favors large investors over smaller ones, and should require the charity to which uncashed funds are distributed to be selected by vote; and (5) the percentage requested from the Settlement Fund for attorneys' fees and expenses is too large given the amount of work done, the lack of support for the hourly rates, and the fact that the case was settled using insurance proceeds. *Id*.

On May 2, 2022, Ms. Scott filed a motion to lift the discovery stay, claiming that discovery needs to be lifted to ascertain the reasonableness of the proposed Settlement Fund. Objector's Mot. to Lift Disc. Stay, ECF No. 202 (May 2, 2022). Specifically, she seeks information about the amount of insurance proceeds that Defendants could rely on, in order to determine the fairness, reasonableness, and adequacy of the Settlement Fund. *Id*. at 1.

On May 10, 2022, the Court conducted a hearing (the "Settlement Hearing") to consider,

among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and should therefore be approved; (b) whether a judgment should be entered dismissing the Action with prejudice as against Defendants; and (c) whether the application by Lead Counsel's for an award of attorneys' fees and litigation expenses should be approved.

This Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on December 27, 2021; and (b) the Notice and the Summary Notice filed with the Court on April 5, 2022.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(e) requires that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *see D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("Under Federal Rule of Civil Procedure 23, a class action cannot be settled without the approval of the District Court.") (citing Fed. R. Civ. P. 23(e)).

Thus, "[b]efore reaching the merits of the proposed settlement," this Court "must first ensure that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b)." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 349 (E.D.N.Y. 2006); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (holding that Rule 23(a) and (b) analysis is independent of Rule 23(e) fairness review).

"Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or

defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting Fed. R. Civ. P. 23(a)). "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id*. at 614.

"Certification of a class for settlement purposes only is permissible and appropriate, provided these [Rule 23(a) and (b)] standards are met." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006). The settlement-only class certification inquiry requires this Court to "demand undiluted, even heightened, attention in the settlement context" to Rule 23's "specifications . . . designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem Prods., Inc.*, 521 U.S. at 620. "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Courts may approve class action settlements "only after a hearing and only on finding that [the proposed settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether the proposed settlement is fair, reasonable, and adequate, Federal Rule of Civil Procedure 23(e) provides that courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id*. In deciding whether the compromise is fair, reasonable, and adequate, the Court must

consider both "the substantive terms of the settlement" and whether "the negotiating process by which the settlement was reached" shows that "the compromise [is] the result of arm's-length negotiations." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).

With respect to attorneys' fee awards, courts in the Second Circuit use one of two different methods to analyze their reasonableness. *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000) ("In sum, we hold that both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases."); *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ("[I]t remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method.") (internal quotation marks omitted). The Second Circuit also has recognized the use of the lodestar "as a baseline even if the percentage method is eventually chosen" and "encourage[d] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995)); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ("The lodestar cross-check works best as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall."). "Irrespective of which method is used, the '*Goldberger* factors' ultimately determine the reasonableness" of an attorney's fee award in a class action settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) [hereinafter *Visa U.S.A.*]. The six factors include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (citing *Goldberger*, 209

F.3d at 50).

## III.   DISCUSSION

The Court begins by noting that it has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 380 (2016) ("Like the Third Circuit, we read § 27 as conferring exclusive federal jurisdiction of the same suits as 'aris[e] under' the Exchange Act pursuant to the general federal question statute." (citing 28 U.S.C. § 1331)); *In re Bristol-Myers Squibb Derivative Litig.*, No. 02 Civ. 8571(LAP), 2007 WL 959081, at *6 (S.D.N.Y. Mar. 30, 2007) ("[D]efendant [ ] is subject to personal jurisdiction in this District based on its substantial operations within this District."); *Messinger v. United Canso Oil and Gas Ltd.*, 80 F.R.D. 730, 734 (D. Conn. 1978) ("Unlike the truly adverse claims stated against 'real' defendants . . . the naming of the derivative corporation as a party defendant raises no potentially harmful consequences for the corporation, because plaintiff is acting solely for the corporation's benefit. Due process is therefore satisfied so long as the corporation has notice of the suit.").

As outlined below, the Court finds that the proposed Settlement is fair, reasonable, adequate, and in the best interest of the class. The Court further finds the Settlement to be the product of extensive arm's length negotiations conducted by highly experienced counsel.

The Court therefore certifies the Settlement Class and approves the proposed Settlement.

### A.  Certification of Class for Settlement Purposes

Lead Plaintiffs move to certify a settlement class of "all persons and entities who purchased or otherwise acquired shares of publicly traded common stock and Mandatory Convertible Preferred Stock of Frontier Communications Corporation between April 25, 2016

and October 31, 2017, inclusive . . . and were allegedly damaged thereby." Stipulation at 14–15.

The Court makes the following findings on ascertainability, numerosity, commonality, typicality, adequacy of representation, and predominance.

### 1. Ascertainability

The Second Circuit has recognized that Rule 23 contains an "'implied requirement of ascertainability.'" *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)). The Second Circuit has clarified that this is not a "freestanding administrative feasibility requirement," but requires "only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobas Sec.*, 862 F.3d 250, 264 (2d Cir. 2017); *see also id.* at 265–267 ("[A] class must be 'sufficiently definite *so that* it is administratively feasible for the court to determine whether a particular individual is a member'; a class must be 'defined by objective criteria' *so that* it will not be necessary to hold 'a mini-hearing on the merits of each case.'" (internal citations omitted)).

This class is defined solely by objective criteria: class members must have acquired shares of publicly traded common stock and Mandatory Convertible Preferred Stock of Frontier Communications Corporation between April 25, 2016 and October 31, 2017. Stipulation at 14–15. Using this definition, A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data" or "Claims Administrator") created a list of potential Settlement Class Members using the shareholder data files provided by Defendants' Counsel and its own proprietary database. Suppl. Ewashko Decl. ¶ 3, ECF No. 205 (May 3, 2022). Notice also was provided on a website, through third party systems, and to third-party nominees through which stockholders may have purchased these securities. *Id.* ¶¶ 2–8.

The proposed Settlement Class therefore is ascertainable.

### 2.  Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that any putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While courts "have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), the Second Circuit has recognized that "numerosity is presumed at a level of 40 members," *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (internal citation omitted).

The proposed Settlement Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, over 190,000 potential Settlement Class Members have been identified. According to Lead Plaintiffs,

> Throughout the Class Period, the common stock of Frontier Communications Corporation was actively traded on NASDAQ, and as of March 12, 2018, Frontier had more than 78 million shares of common stock outstanding. In addition, 17,500,000 shares of the Mandatory Convertible Preferred Stock of Frontier Communications Corporation circulated during the Class Period.

Mem. of Law in Supp. of Lead Pls.' Unopposed Mot. for Prelim. Approval of Settlement and Authorization to Disseminate Notice of Settlement at 27, ECF No. 192-1 (Dec. 27, 2021) ("Mem. in Supp. of Mot. for Prelim. Approval").

The numerosity requirement therefore is satisfied.

### 3.  Commonality

Federal Rule of Civil Procedure 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one stroke.").

This class action presents questions of both law and fact that are common to the class. Cases in this Circuit have repeatedly found commonality in cases, like this one, where the Defendants are accused of concealing material information or making misleading or false statements that violate federal securities laws. *See, e.g.*, *In re Globalstar Sec. Litig.*, No. 01 Civ. 1748 (PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading [and] whether those statements violated the federal securities laws[.]"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

The commonality requirement therefore is satisfied.

### 4. Typicality

Federal Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality requires that 'the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (quoting *Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)).

The proposed representative parties and their claims and defenses are typical of the class as a whole. Each proposed representative party is a member of the proposed Settlement Class and alleged to have been damaged by the same conduct as the class more broadly—*i.e.*, the inflation of stock through false and misleading information. Lead Plaintiffs therefore "have the

incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (internal citation and quotation marks omitted).

The typicality requirement therefore is satisfied.

### 5.  Adequacy of Representation

Federal Rule of Civil Procedure 23(a)(4) requires that the representative parties "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

The Court is not aware of any conflicts between the Lead Plaintiffs, Lead Counsel, and the claims of the proposed Settlement Class Members. Lead Plaintiffs' interests are aligned with those of the other Settlement Class Members. Lead Plaintiff shares a common goal with all other proposed Settlement Class Members: maximizing recovery. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Additionally, Lead Plaintiffs retained Lead Counsel, Bernstein Litowitz, which has experience litigating complex securities class actions.[3]

Lead Plaintiffs therefore will fairly and adequately protect the interest of the proposed Settlement Class.

---

[3] *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2004 WL 2591402, at *20 (S.D.N.Y. Nov. 12, 2004) ("The quality of the representation given by Lead Counsel [including Bernstein Litowitz] is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation[.]"); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009) ("[W]hen Class Counsel [including Bernstein Litowitz] are 'nationally recognized members of the securities litigation bar,' it is entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement." (quoting *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 655 (E.D. Va. 2001)).

### 6. Predominance

Federal Rule of Civil Procedure 23(b)(3) requires that, before certifying an opt-out class, a court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "This predominance requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 96–97 (2d Cir. 2018) (quoting *Mazzei*, 829 F.3d at 272). "The predominance requirement is satisfied if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof,' and 'these particular issues are more substantial than the issues subject only to individualized proof.'" *Id*. at 97 (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).

Here, the common questions of law and fact predominate over any question affecting only individual members of the proposed Settlement Class. The core legal and factual question—whether an untrue statement or omission was made and whether it was objectively material—predominates over any other question affecting individual members. *See, e.g*., *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 238 (S.D.N.Y. 2015); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008).

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class certification promotes efficiency and uniformity of judgment because the many class members will not be forced to separately pursue claims or execute settlements in various courts around the country.

Based on these findings, the Court certifies the proposed Settlement Class for settlement

purposes under Federal Rules of Civil Procedure 23(c) and 23(e), comprised of all persons and entities who purchased or otherwise acquired shares of publicly traded common stock and Mandatory Convertible Preferred Stock of Frontier Communications Corporation between April 25, 2016 and October 31, 2017.

The following are excluded from the Settlement Class: (i) Defendants and all Former Defendants; (ii) the Immediate Family Members of any Individual Defendant or any Former Defendant; (iii) any person who was an Officer, director, or partner of Frontier or any Former Defendant during the Class Period and any of their Immediate Family Members; (iv) any parent, subsidiary, or affiliate of Frontier or any Former Defendant; (v) any firm, trust, corporation, or other entity in which any Defendant, any Former Defendant, or any other excluded person or entity has, or had during the Class Period, a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded persons or entities. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

Accordingly, the Court confirms its appointment of Arkansas Teacher Retirement System and Carlos Lagomarsino as Lead Plaintiffs, as well as its prior appointment of Bernstein, Litowitz, Berger, & Grossman LLP as Lead Counsel.

### B. Notice

"For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

To satisfy due process, class notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)), *aff'd*, 107 F.3d 3 (2d Cir. 1996). In the Second Circuit, a settlement notice must also "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Visa U.S.A.*, 396 F.3d at 114 (internal citation and quotation marks omitted).

Accordingly, when the Court ordered notice to the proposed Settlement Class, it directed Notice be disseminated to the Settlement Class, and approved the proposed Notice, Claim Form, and Summary Notice, as well as the comprehensive notice program agreed to by the Parties. Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement at 4–7, ECF No. 193 (Jan. 18, 2022).

The Court finds that the Parties implemented the Notice program, consistent with the terms of the Court's Preliminary Approval Order.

This Notice program therefore both satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and provided the best notice practicable under the circumstances.

The Court further finds that Defendants, through the Claims Administrator, provided notice of the Settlement to the appropriate state and federal government officials under the Class Action Fairness Act, 28 U.S.C. § 1715. Notice, ECF No. 201 (Apr. 29, 2022). Furthermore, the Court has given the appropriate state and federal government officials the requisite ninety days to comment or object to the Settlement Agreement before entering this Ruling and Order and the

associated Judgment.

### C. Final Approval of the Terms of the Settlement

"In determining whether a settlement is fair, reasonable, and adequate, the District Court examines the 'negotiating process leading up to the settlement[, *i.e.,* procedural fairness,] as well as the settlement's substantive terms[, *i.e.,* substantive fairness].'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009) (quoting *D'Amato*, 236 F.3d at 85) (alterations in *McReynolds*).

First, the Court "must review the negotiating process leading up to the settlement for procedural fairness, to ensure that the settlement resulted from an arm's-length, good faith negotiation between experienced and skilled litigators." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (citing *McReynolds*, 588 F.3d at 803–04; *D'Amato*, 236 F.3d at 85). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Visa U.S.A.*, 396 F.3d at 116 (quoting Manual for Complex Litigation, Third § 30.42 (1995)).

Here, the Court finds that presumption is met.

The Parties have been litigating this case since 2017, through a bankruptcy proceeding and a global pandemic, and have been involved in arm's-length negotiations since on or about May 4, 2021 through September 30, 2021, while the Court's dismissal of the action was pending. Mem. in Supp. of Mot. for Prelim. Approval at 13–14, 18.

Also, as noted above, Lead Counsel is a skilled law firm with significant experience in complex securities litigation. Bernstein Litowitz also has been involved in the litigation for over two years, and therefore the Court also affords "'great weight'" to Lead Counsel's recommendation, in light of their being "most closely acquainted with the facts of the underlying

litigation." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998)

(quoting *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992)).

Though fact discovery had not yet been completed when settlement discussions began,

Lead Counsel had conducted extensive investigation into the alleged fraud claims, by conducting

interviews of over 120 former Frontier employees; conducting "a thorough review of public

information such as SEC filings, analyst reports, conference call transcripts, and news articles[;] .

. . consulting with an expert on market efficiency and class-wide damages; [and] retaining and

consulting with experienced bankruptcy counsel to protect the Settlement Class's interests in

Frontier's bankruptcy proceeding." Decl. of Katherine M. Sinderson at 41–42, ECF No. 198

(Apr. 5, 2022) ("Sinderson Decl."). Lead Plaintiffs therefore have "engaged in the discovery,

necessary to effective representation of the class's interests." *Weinberger*, 698 F.2d at 74

(internal citation omitted).

Accordingly, "meaningful" discovery has occurred and the presumption of procedural

fairness has been met. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d

164, 174 (S.D.N.Y. 2000) ("[W]hile no formal discovery was conducted in this case, plaintiffs

were afforded several opportunities to extensively review records provided by the Austrian

Banks . . . . Therefore the Settlement enjoys a presumption of [procedural] fairness."), *aff'd sub*

*nom. D'Amato*, 236 F.3d at 85–86 (rejecting appellants' argument that counsel misrepresented

the importance of the Austrian Banks' agreement to provide access to documents, and finding

that "the District Court in this case examined the negotiation process with appropriate scrutiny");

*Ferrick v. Spotify USA Inc.*, No. 16-CV-8412 (AJN), 2018 WL 2324076, at *3 (S.D.N.Y. May

22, 2018) (settlement entitled to presumption of procedural fairness where "settlement

negotiations included the exchange of tens of millions of rows of Spotify's data and

work by experts on both sides to evaluate the settlement value of the case."); *cf. Plummer v. Chem. Bank*, 668 F.2d 654, 658 (2d Cir. 1982) ("Although negotiations in the instant case were conducted by undesignated class representatives without formal pretrial discovery, this, standing alone, did not preclude judicial approval.").

The Court also notes that the settlement has been endorsed by Arkansas Teacher Retirement System, a "sophisticated institutional investor," and so, the settlement is "'entitled to an even greater presumption of reasonableness[.]'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)).

"The court must also evaluate substantive fairness considering the nine *Grinnell* factors set forth in *Detroit v. Grinnell Corp.*: '(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.'" *Charron*, 731 F.3d at 247 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); citing *McReynolds*, 588 F.3d at 804). "A court need not find that every factor militates in favor of a finding of fairness; rather, a court 'consider[s] the totality of these factors in light of the particular circumstances.'" *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004)).

The Court makes the following findings and concludes that the balance of the *Grinnell* factors weighs in favor of approving the Settlement Agreement.

### 1.   Complexity, Expense, and Likely Duration of the Litigation

The first *Grinnell* factor requires the Court to consider the complexity, expense, and likely duration of the litigation. *Visa U.S.A.*, 396 F.3d at 117. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them" and courts therefore favor class action settlements. *In re Holocaust Litig.*, 80 F. Supp. 2d at 174.

Lead Counsel have already spent over 6,200 hours on this case over several years. Att'ys' Fees Mem. at 7; Sinderson Decl. ¶¶ 13–58, 114–15. "Absent a settlement, [litigation] costs will only escalate as a result of discovery proceedings, motion practice, trials, and likely appeals." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) (per curiam). In fact, before the Stipulation was agreed to, the case was already on appeal with the Second Circuit.

Accordingly, the first *Grinnell* factor supports approval of the settlement.

### 2.   Reaction of the Class to the Settlement

"One of the factors most courts consider is the reaction of the absent class members, specifically the quality and quantity of any objections and the quantity of class members who opt out." 4 Newberg on Class Actions § 13:54 (5th ed.). Courts may consider two reactions: optouts and objections. *Id*. "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Visa U.S.A.*, 396 F.3d at 118 (quoting 4 Newberg § 11.41, at 108); *see also In re AOL Time Warner*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("The reaction of the class is generally gauged by

reference to the extent of objection to the settlement.").

Here, there was only one objection to the settlement and only seventy-four persons and entities have opted out, out of 190,323 potential Settlement Class Members. Proposed Order at 11–14, ECF No. 211 (May 10, 2022). This reaction strongly supports approval. *See Visa U.S.A.*, 396 F.3d at 118 (noting eighteen objections out of five million individuals notified of settlement and stating that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement" (quoting 4 Newberg § 11.41, at 108)); *see also In re AOL Time Warner*, 2006 WL 903236, at *10 (finding that an opt-out rate of less than 0.2% of 4.7 million class members favored settlement); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012) (approving settlement where "fewer than 1% of the tenants who received notice opted out of the lawsuit, and an even smaller percentage objected").

Accordingly, the second *Grinnell* factor supports approval of the settlement.

### 3.   The Stage of the Proceedings and the Amount of Discovery Completed

"The stage of the proceedings and the amount of discovery completed at the time a Settlement is reached is relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re PaineWebber*, 171 F.R.D. at 126 (citing *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 55–56 (S.D.N.Y. 1993)). However, "[t]o approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery." *In re Holocaust Litig.*, 80 F. Supp. 2d at 176 (citing *Plummer*, 668 F.2d at 658). "Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *Id.* (quoting *Plummer*, 668 F.2d at 660; citing *Klein v. PDG Remediation, Inc.*, No. 95 Civ. 4954, 1999 WL 38179, at *2 (S.D.N.Y. Jan. 28, 1999)); *see also*

*In re AOL Time Warner*, 2006 WL 903236, at *10 ("The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

While Lead Counsel has completed only informal discovery and has not yet adjudicated the case due to a pending appeal, as discussed above, Lead Counsel has engaged in an extensive investigation of the facts. Moreover, as discussed *infra*, Section III.C.7, Lead Counsel has considered, with the assistance of damages experts, the range of reasonableness of settlement in light of the current litigation risks. *See D'Amato*, 236 F.3d at 87 ("[T]he district court properly recognized that, although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information. . . . Thus, the 'stage of proceedings' factor also weighed in favor of settlement approval.").

Accordingly, the Court finds the third *Grinnell* factor weighs in favor of approval.

### 4.  The Risks of Establishing Liability and Damages

"One of the Court's central inquiries when appraising a settlement is the likelihood that the class would prevail at trial in the face of the risks presented by further litigation." *In re AOL Time Warner*, 2006 WL 903236, at *11. In determining the risks of establishing liability and damages, courts need not "adjudicate the disputed issues or decide unsettled questions; rather, [courts] need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing*, 225 F.R.D. at 459 (citing *In re Holocaust Litig.*, 80 F. Supp. 2d at 177).

The Court already dismissed this case with prejudice, and the dismissal was on appeal with the Second Circuit when settlement negotiations began. As noted above, if the Lead Plaintiffs were unsuccessful on appeal, the parties are at risk of not recovering at all. If the

appeal were successful, the parties would have to establish liability—which includes proving that Defendants' statements were knowingly false—in addition to loss causation and damages. As Lead Plaintiffs point out, their entire case hinges on their ability to prove the claim relating to a single allegedly false statement that mislead investors. Mot. for Prelim. Approval at 20; *see also* Sinderson Decl. ¶¶ 70–74. Though the Court does not express any forward-looking views on how it would rule on the case, the difficulty of establishing all of these is underscored by the Court's previous dismissal of the claims stemming from Defendants' alleged statements. Ruling and Order at 25–51. Regardless of the merits of the case if it were remanded to this Court, "[l]itigation inherently involves risks." *In re PaineWebber*, 171 F.R.D. at 126.

Accordingly, the fourth and fifth *Grinnell* factors weigh in favor of approval.

### 5.  The Risks of Maintaining the Class Action Through Trial

"One of the factors most courts consider is how certain the court is that the class certification requirements are met and maintainable." 4 Newberg § 13:51. This consideration is separate from, although related to, the Court's determination that the class should be certified for settlement purposes. *Id*.

Though the Court has certified the class for settlement purposes, the process of class certification "would have subjected Plaintiffs to considerably more risk than the . . . certification that was ordered for the sole purpose of the Settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *12.

Accordingly, the sixth *Grinnell* factor weighs in favor of approval.

### 6.  Defendants' Ability to Withstand a Greater Judgment

The Parties have not argued that Defendants are unable to withstand a greater judgment. The Court notes, however, that this factor, "standing alone, does not suggest that the settlement

is unfair," especially where the "other *Grinnell* factors weigh heavily in favor of settlement[.]" *D'Amato*, 236 F.3d at 86. Therefore, given the application of the other *Grinnell* factors in this case, the Court need not determine whether Defendants could have withstood a larger judgment, and may still approve the settlement agreement. *Accord Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *10 (D. Conn. Nov. 3, 2016) ("Thus, even if the Defendants here could afford to pay more than the $107 million Settlement Amount, this does not prevent the Court from approving this Settlement as fair and reasonable.").

Accordingly, the seventh factor also weighs in favor of approval.

### 7. The Range of Reasonableness of the Settlement

The final *Grinnell* factors require examination of the "range of reasonableness" of the settlement "in light of the best possible recovery" and "in light of all the attendant risks of litigation." *Visa U.S.A.*, 396 F.3d at 117. Courts should "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462.

Lead Plaintiffs' damages expert estimates that the maximum recoverable damages are approximately $885 million. Mem. in Supp. of Mot. for Prelim. Approval at 21. Though the $15.5 million Settlement Amount represents only 7% of the estimated maximum recoverable damages, the Court concludes that the Settlement Amount is reasonable in light of the risks of litigation. *See Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 103 (D. Conn. 2010) (granting preliminary approval of settlement representing approximately 8% of maximum recoverable damages); *In re Canadian Superior Sec. Litig.*, No. 09 Civ. 10087 (SAS), 2011 WL 5830110, at *2 (S.D.N.Y. Nov. 16, 2011) (approving settlement representing 8.5% of maximum damages,

which the court noted "exceed[s] the average recovery in shareholder litigation"); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[A]verage settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses." (internal citation omitted)). Significantly, a recovery of $885 million would only be possible if Lead Plaintiffs successfully appealed the dismissal of the action and then overcame the substantial difficulty of establishing liability and damages on the basis of the single false and misleading statement still at issue in the case. Mem. in Supp. of Mot. for Prelim. Approval at 19–21. Continued litigation also would delay the case by several years and incur substantial costs from the current appeal, discovery, motions for summary judgment, and trial.

Accordingly, the eighth and ninth *Grinnell* factors weigh in favor of approval.

As a result, the *Grinnell* factors—taken as a whole—support finding the settlement substantively fair, reasonable, and adequate.

The Court therefore approves the Settlement Agreement.

### D. Attorneys' Fees

Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney[s'] fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts in the Second Circuit use one of two different methods to analyze the reasonableness of attorneys' fees awards in class actions that result in a common fund settlement. *Goldberger*, 209 F.3d at 50 ("In sum, we hold that both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases."); *see also McDaniel*, 595 F.3d at 417 ("[I]t remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the

'percentage of the fund' method." (internal quotation marks omitted)). The first method, the

"lodestar method," begins with the multiplication of "the reasonable hours billed by a reasonable

hourly rate." *In re Colgate-Palmolive*, 36 F. Supp. 3d at 347–48. The district court may then

"adjust the multiplier based on other factors such as the risk of the litigation or the performance

of the attorneys." *Id*. at 348. The second method, the "percentage of the fund" method, sets a fee

that is "a reasonable percentage of the total value of the settlement fund created for the class." *Id*.

The general trend in this Circuit favors using the percentage method in common fund cases. *See*

*Visa, U.S.A.*, 396 F.3d at 121 ("The trend in this Circuit is toward the percentage method[.]"

(internal citations omitted)).

      The Second Circuit also has recognized the use of the lodestar "as a baseline even if the

percentage method is eventually chosen" and "encourage[d] the practice of requiring

documentation of hours as a 'cross check' on the reasonableness of the requested percentage."

*Goldberger*, 209 F.3d at 50 (quoting *In re Gen. Motors Corp.*, 55 F.3d at 820); *see also In re*

*Colgate-Palmolive*, 36 F. Supp. 3d at 353 ("The lodestar cross-check works best as a sanity

check to ensure that an otherwise reasonable percentage fee would not lead to a windfall.").

Accordingly, many courts adopt this combined approach. *See, e.g.*, *Ferrick*, 2018 WL 2324076,

at *10 ("When the lodestar method is applied here to cross-check the reasonableness of the

requested percentage, it becomes apparent that the requested award is too high."); *Kemp-*

*DeLisser*, 2016 WL 6542707, at *17 ("That the proposed fee award represents a 2.77 multiplier

compared to Class Counsel's lodestar supports the reasonableness of the award.").

      "Irrespective of which method is used, the '*Goldberger* factors' ultimately determine the

reasonableness" of an attorney's fee award in a class action settlement. *Visa, U.S.A.*, 396 F.3d at

121. The six factors include: "(1) the time and labor expended by counsel; (2) the magnitude and

complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (citing *Goldberger*, 209 F.3d at 50).

Here, Lead Counsel seek an attorneys' fee award of twenty-five percent of the Settlement Amount.

The Court finds that the first four factors weigh in favor of awarding the requested attorneys' fees, for the reasons discussed above. Most notably, Lead Counsel have spent over 6,200 hours of attorney and professional staff time on this case, over several years. These hours include time spent interviewing former employees, researching and drafting, motions practice, and bringing an appeal. Att'ys' Fees Mem. at 7–8, 17–18. The Court also again notes that the risk of litigation has been significant, in light of the two times the case has been dismissed and the bankruptcy reorganization that increased the risk of not obtaining any remedy. *See id.* at 7–8, 17–18, 20; *see also* Sinderson Decl. ¶¶ 70–82; *see also In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.").

As to the fifth factor, the Court finds that the requested amount does not confer on the attorneys an "unwarranted windfall." *Goldberger*, 209 F.3d at 49 ("The express goal of the *Grinnell* opinions was to prevent unwarranted windfalls for attorneys.").

The Court finds that the requested fee is reasonable under the percentage-of-the-fund method of calculating attorneys' fees. The requested percentage is within the range of percentages awarded in the Second Circuit in comparable class action. *See, e.g.*, *In re Priceline.com, Inc., Sec. Litig.*, Master File 3:00-CV-1884 (AVC), 2007 WL 2115592, at *5 (D.

Conn. July 20, 2007) (approving attorneys' fee award of 30% of the settlement fund and listing other Second Circuit cases that approved between 25-33 1/3% of the settlement fund in attorneys' fees).

In any event, the Court has reviewed the lodestar crosscheck of the fees and expenses award requested. *Id.* at 50 ("Indeed, we encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." (quoting *In re Gen. Motors Corp.*, 55 F.3d at 820)); *see also In re Colgate-Palmolive*, 36 F. Supp. 3d at 353 ("The lodestar cross-check works best as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall."). Having reviewed the lodestar crosscheck calculation, the Court concludes that a 1.05 lodestar multiplier is reasonable. Sinderson Decl. at 6; *see Visa U.S.A.*, 396 F.3d at 123 (affirming a multiplier of 3.5); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-CV-00738 (RNC), 2014 WL 3778211, at *7 (D. Conn. July 31, 2014) (collecting cases that have approved awards with a lodestar multiplier of up to eight times the lodestar).

The Court also finds that public policy favors this award because it will continue to encourage attorneys to take these types of cases on a contingency basis and further encourage enforcement of securities laws. *See In re Priceline.com, Inc., Sec. Litig.*, 2007 WL 2115592, at *5 ("The fee fairly compensates competent counsel in a complex securities case and helps to perpetuate the availability of skilled counsel for future cases of this nature.").

Accordingly, Lead Counsel are hereby awarded attorneys' fees in the amount of $3,875,000, a fair and reasonable sum after considering the factors outlined in *Goldberger*, 209 F.3d at 50.

### E. Litigation Expenses

Under Federal Rule of Civil Procedure 23(h), the court also may award "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Courts may reimburse counsel for expenses reasonably and necessarily incurred in litigating a class action." *Kemp-DeLisser*, 2016 WL 6542707, at *18.

Plaintiffs seek reimbursement for $267,688.00 in litigation costs. *See* Sinderson Decl. ¶¶ 120, 122; Ex. 4A to Sinderson Decl. at 5–11, ECF No. 198-5 (Mar. 5, 2022) (summarizing expenses). These fees include expert fees, research and drafting, retention of bankruptcy counsel, and routine litigation expenses such as court costs, travel, delivery, printing, and copying, Sinderson Decl. ¶¶ 123–127, all of which Lead Counsel argue were "reasonable and necessary to the successful litigation of the Action, and have been approved by Lead Plaintiffs," *id.* ¶ 127; Ex. 1 to Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement at 4, ECF No. 193-1 (Jan. 18, 2022).

The Notice informed Class Members that Class Counsel will ask the Court for payment of Litigation Expenses in an amount not to exceed $500,000.00. Sinderson Decl. ¶ 128.

Having reviewed the breakdowns of litigation costs submitted by Lead Counsel, the Court agrees with Lead Counsel that the costs here were reasonably and necessarily incurred in litigating this class action. Ex. 4A to Sinderson Decl. at 5–11, ECF No. 198-5 (Mar. 5, 2022).

Accordingly, the Court awards Lead Counsel $267,688.00 in costs.

No proceedings or court order with respect to the award of attorneys' fees and litigation expenses to Shareholders' Counsel shall in any way disturb or affect this Judgment (including precluding this Judgment from being Final or otherwise being entitled to preclusive effect), and any such proceedings or court order shall be considered separate from this Judgment.

**F.  Objection to the Settlement, Proposed Plan of Allocation, and Attorneys' Fees and Litigation Expenses**

On April 14, 2022, the Court received the only objection filed, from Catherine Scott, a member of the proposed Settlement Class who purchased stock through a broker. Scott Objection at 10–13. Ms. Scott objected to the proposed Plan of Allocation and the Motion for Attorneys' Fees and Litigation Expenses. Ms. Scott raised a number of concerns: (1) that the notice provided was late; (2) that the settlement is unfair because the relationship between Lead Plaintiffs and Lead Counsel is unclear and the fund was determined without assessing individual investors' relative losses; (3) the notice did not fairly apprise prospective members of the class of the terms of the proposed settlement; (4) the Plan of Allocation sets an incorrect end-date to the look back dates, favors large investors over smaller ones, and should require the charity to which uncashed funds are distributed to be selected by vote; and (5) the percentage requested from the Settlement Fund for attorneys' fees and expenses is too large given the amount of work done, the lack of support for the hourly rates, and the fact that the case was settled using insurance proceeds. Scott Objection at 1–8.

Regarding her objection to the settlement because she "received very short notice of the existence of the class action and had very little time to assess it," Scott Objection at 1–2, the Court finds that the Claims Administrator followed the notice procedure outlined in the Court's Preliminary Approval order, which included the process for notifying nominees and brokers. *See* Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement at 4–7, ECF No. 193 (Jan. 18, 2022). Ms. Scott also claims that the notice fails the requirements of Federal Rule of Civil Procedure 23(e)(1) because it "does not fairly apprise the prospective members of the class of the terms of the proposed settlement." Scott Objection at 5.

The Court does not find that settlement should be denied because Ms. Scott received

notice of the class action on April 7, 2022, when objections were due to the Court by April 19, 2022. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 411 (S.D.N.Y. 2018) (finding notice sufficient where "[t]he notice process . . . was reasonably calculated to apprise potential class members of the settlement," including by "requesting [that the] [n]ominees provide the names of those that could not" be identified through reasonable efforts); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. at 368 ("[F]or the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected."). The Court also notes that Ms. Scott had sufficient time to object to the settlement. Indeed, she had the opportunity to voice her objections at the May 10, 2022 Settlement Hearing and had sufficient time to file both an objection and a motion to lift the discovery stay. *See* Objector's Mot. to Lift Disc. Stay, ECF No. 202 (May 2, 2022). For the reasons previously stated, the Court also finds that the notice does not fail the requirements of Federal Rule of Civil Procedure 23.

Ms. Scott's second objection to the settlement is that it is "unfair" because "[L]ead Plaintiffs' interests are antagonistic to other members of the class, and there is no genuine concern on the part of the leads to the average person who invested money in Frontier." Scott Objection at 3. Relatedly, Ms. Scott claims that "[o]utstanding questions pertain to what the pre-existing relationship of the Arkansas Teachers Retirement System is to Lead Counsel." *Id*. at 3–4. Ms. Scott also expressed concern about the Settlement Fund amount having been determined before the relative losses of individual investors were assessed. *Id*. at 4–5.

The Court has already discussed the adequacy of Lead Plaintiffs' representation. *Supra* Section III.A.5. The Court also notes that on January 1, 2018 it issued an order selecting Lead Plaintiffs from among eleven different parties that filed motions for appointment as lead plaintiff.

In the same order, it approved Lead Counsel. Before issuing this order, the Court reviewed various filings and heard oral argument. Ruling and Order on Mots. to Consolidate, Appoint Lead Pl., and Approve Lead Counsel at 18, ECF No. 99 (Jan. 18, 2018). In its order appointing Lead Plaintiffs and approving Lead Counsel, the Court explicitly noted that it would "only reject the plaintiff's choice of counsel if necessary 'to protect the interests of the class.'" *Id*. at 24 (citing 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(aa), 78u-4(a)(3)(B)(iii)(II)(aa)). The Court also notes that Lead Plaintiffs and Lead Counsel conducted loss analyses before the settlement was negotiated and not after, as Ms. Scott alleges. Reply Mem. of Law in Further Supp. of Lead Pls.' Mot. for Final Approval of Class Action Settlement and Plan of Allocation at 11, ECF No. 204 (May 3, 2022) (citing Sinderson Decl. ¶ 61).

Ms. Scott objects to the Plan of Allocation because it sets January 29, 2018 as the end of the 90-day look back dates, when Lead Plaintiffs had claimed before the Court that February 27, 2018 was the correct date. Scott Objection at 6. She also claims that the Plan of Allocation favors large investors over smaller ones because people with claims below a certain amount are not able to recover. *Id*. at 7. Regarding the Plan of Allocation, Ms. Scott also claims that the charity to which uncashed funds are distributed should be selected by vote and not by Lead Counsel. Scott Objection at 7.

The Court finds that January 29, 2018 is the correct end-date for the 90-day look back period because the class period at issue is set forth in the proposed Amended Complaint filed in May 2019. Reply Mem. of Law in Further Supp. of Lead Pls.' Mot. for Final Approval of Class Action Settlement and Plan of Allocation at 13, ECF No. 204 (May 3, 2022). As to Ms. Scott's second objection to the Plan of Allocation, courts routinely establish a minimum payment threshold in order to avoid expenses that outweigh the benefits to the class as a whole. *See, e.g.*,

34

*In re Glob. Crossing*, 225 F.R.D. at 463 ("Class counsel are entitled to use their discretion to

conclude that, at some point, the need to avoid excessive expense to the class as a whole

outweighs the minimal loss to the claimants who are not receiving their de minimis amounts of

relief."); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 692–93 (D. Colo. 2014) (finding that a

"$10.00 threshold for payment from the Net Settlement Fund is proper in order to preserve the

settlement fund from excessive and unnecessary expenses" (internal citation and quotation marks

omitted)). To the extent that Ms. Scott finds issue with the role given to large institutional

investors, the Court previously recognized that case law and "the legislative history of the

PSLRA indicates that Congress intended to encourage institutional investors with the largest

stake in the litigation to steer the litigation." Ruling and Order on Mots. to Consolidate, Appoint

Lead Pl., and Approve Lead Counsel at 23, ECF No. 99 (Jan. 18, 2018).

 As to Ms. Scott's argument that *cy pres* designation should be selected by vote and not by

Lead Counsel, Lead Plaintiffs respond that allowing Authorized Claimants to vote for a *cy pres*

recipient "would impose massive administrative costs." Reply Mem. of Law in Further Supp. of

Lead Pls.' Mot. for Final Approval of Class Action Settlement and Plan of Allocation at 14, ECF

No. 204 (May 3, 2022). Lead Plaintiffs state that "[t]he Court can make a more efficient

determination of a suitable *cy pres* recipient." *Id*. (emphasis added). The Court agrees and is

unable to identify any precedent supporting the proposal that Settlement Class Members vote on

a *cy pres* recipient. *See In re Citigroup Inc. Sec. Litig*., 199 F. Supp. 3d 845, 851 (S.D.N.Y.

2016) ("Indeed, class counsel is most certainly not entitled to unfettered discretion in selecting

counsel's favorite *cy pres* designees. . . . But in the absence of any evidence of an actual or

apparent conflict of interest, class counsel is entitled to a certain amount of leeway.").

 Finally, Ms. Scott objects to the attorneys' fees and litigation expenses because she

"do[es] not believe that much work was done in this case." Scott Objection at 7. At the May 10,

2022 hearing, Ms. Scott raised a case from the District of Massachusetts involving one of the

Lead Plaintiffs, Arkansas Teacher Retirement System. *Arkansas Teacher Retirement Sys. v.*

*Insulet Corp.*, 546 F. Supp. 3d 11 (D. Mass. 2021). Ms. Scott noted that the court in the District

of Massachusetts case cut the attorneys' fees substantially due to the firm's characterization of

the hourly rate.

The Court has already assessed and discussed the reasonableness of the requested

attorneys' fees and litigation expenses, *supra*, and so will not again address this question. The

Court also finds that the District of Massachusetts case further supports the award of twenty-five

percent of the Settlement Fund, as the court in that case awarded twenty-five percent of the

common fund to the attorneys who had not provided "misleading representations" concerning

their regular hourly rates. *Id*. at 18. Ms. Scott has not provided any reason to believe that Lead

Counsel has provided any "misleading representations," and in fact asserts that she "do[es]

believe that the work was done as described." Scott Objection at 8.

### G. Motion to Lift Discovery

Ms. Scott filed a motion to lift the discovery stay, so that she may request documents

revealing the amount of insurance proceeds available from Directors' and Officers' and Fiduciary

Liability insurance policies. She claims to need this information "to ascertain the reasonableness

of the proposed settlement amount of $15.5 million." Objector's Mot. to Lift Disc. Stay, ECF No.

202 (May 2, 2022).

Lead Plaintiffs oppose this motion and argue that the information sought is of limited

value. Specifically, Lead Plaintiffs claim that "the mere existence of available insurance by no

means indicates that such insurance *would* have been available to fund a greater settlement, nor

would such information in any way undermine the substantial risks faced from continued litigation." Lead Pls.' Mem. of Law in Opp'n to Objector Catherine L. Scott's Mot. to Lift Disc. Stay at 2, ECF No. 206 (May 5, 2022). Lead Plaintiffs also note that they "were provided relevant information about potentially available insurance coverage" which "was taken into account in connection with the extensive, arms-length negotiations undertaken by experienced negotiators in connection with the Settlement." *Id*.

"Objectors to a proposed settlement agreement do not have an 'automatic right to discovery or an evidentiary hearing in order to substantiate their objections.'" *Casey v. Citibank*, Nos. 5:12–CV–820 (LEAD), 1:13–CV–353 (MEMBER), 2014 WL 4120599, at *1 (N.D.N.Y. Aug. 21, 2014) (quoting *Charron*, 731 F.3d at 248). Objectors "may be permitted limited discovery, but only if there is some evidence that the settlement may be collusive or does not adequately reflect the interests of the class members." *Id*.; *see also Visa, USA*, 396 F.3d at 120 ("Generally, such a discovery request depends on 'whether or not the District Court had before it sufficient facts intelligently to approve the settlement offer.'" (quoting *Grinnell*, 495 F.2d at 462–63)).

For the reasons explained above, the Court finds that Ms. Scott has not provided any evidence that the settlement may be collusive or does not adequately reflect class members' interests. The Court has sufficient facts before it to "intelligently . . . approve the settlement offer." *Visa, USA*, 396 F.3d at 120.

## IV.   CONCLUSION

For the reasons explained above, the Court **DENIES** Ms. Scott's motion to lift the discovery stay, **GRANTS** Lead Plaintiffs' motion for final approval of class action settlement and plan of allocation, **GRANTS** Lead Counsel's motion for attorney's fees and litigation

expenses, and **ORDERS** as follows.

(1) For settlement purposes, the Settlement Class is certified under Federal Rules of Civil

Procedure 23(c) and 23(e). The Settlement Class consists of:

> all persons and entities who purchased or otherwise acquired shares
> of publicly traded common stock and Mandatory Convertible
> Preferred Stock of Frontier Communications Corporation between
> April 25, 2016 and October 31, 2017, inclusive . . . and were
> allegedly damaged thereby.

(2) Only the following seventy-four individuals, entities, or organizations identified by

Lead Counsel as having opted-out of the Settlement Class, *see* Ex. 1 to Proposed

Order at 11–14, ECF No. 211 (May 10, 2022), have timely and properly excluded

themselves from the Settlement Class and, therefore, are not members of the

Settlement Class, and are not bound by the terms of the Settlement Agreement, this

Ruling and Order, or the associated Judgment[4]:

| **Name** | **City, State** |
|---|---|
| 1.  Lynne A. Kline TOD<br>Michele S. Armstron<br>Subject to STA TOD Rules | Davie, FL |
| 2.  Leonard & Eileen DeStefano | Drexel Hill, PA |
| 3.  Thelma Niederbuhl | Bloomington, NY |
| 4.  Loretta Griffin | Oak Creek, WI |
| 5.  Carolann Coburn | Tonawanda, NY |
| 6.  R.L. Crigler | Chicago, IL |
| 7.  Estate of Nancy Akin | Minocqua, WI |

---

[4] Lead Plaintiffs did not list Ms. Catherine Scott, the sole objector in the case, as one of the seventy-four individuals or entities to have opted out of the settlement. Proposed Order at 11–14, ECF No. 211 (May 10, 2022). The Court also notes that Ms. Scott's objection does not indicate an intent to opt out. Scott Objection.

| | | |
|---|---|---|
| 8. | Doris F. Killian | Bellingham, WA |
| 9. | Arnold L. Lehmann | Spokane, WA |
| 10. | Karen Foster | Foley, AL |
| 11. | Andrew W. Viola | White Plains, NY |
| 12. | Dennis Michael Erwin<br>Mary Kathleen Erwin | Leawood, KS |
| 13. | Bernard A. Kroeger<br>Alani Kroeger JT Ten | Lutz, FL |
| 14. | Blanche Shirley Miller Virosco | Denville, NJ |
| 15. | Allison Pierce | Rockport, ME |
| 16. | Edwin K. Suganuma & Jeanette<br>Suganuma JT Ten | Honolulu, HI |
| 17. | Patricia Nottmeier Rauch | Columbia, IL |
| 18. | Elizabeth A. Laughlin | Washington, IL |
| 19. | John & Lilly J. Methratta | Martinez, CA |
| 20. | James T. Cook<br>(William T. Cook & Anna G. Cook<br>Revocable Trust UA 02/08/91) | Bensenville, IL |
| 21. | Lewandowski Family Living Tr.<br>Jeanne M. Henderson, TTEE | Bay City, MI |
| 22. | Annamaria F. Demiris | Woodstock, GA |
| 23. | Richard R. Bidney | White Bear Township, MN |
| 24. | James G. McGlynn<br>Katherine M. McGlynn Ten Com | West Mifflin, PA |
| 25. | Robert F. Englmeier | Ft. Pierce, FL |
| 26. | Mary E. Oskroba | Lombard, IL |

27. Mary E. Oskroba & Loretta E. Oskroba JT     Lombard, IL
    Ten

28. John W. Vance                               Columbus, OH

29. Dorthy L. Vance                             Columbus, OH

30. Kathleen Hughes Fisher, TTEE                Fairfax, VA
    For the Kathleen Hughes Fisher
    Trust dtd 05/27/2009

31. S.K. Kashiwagi-McCaskey TTEE               Sacramento, CA
    For Tsugio Fujimoto TR UA dtd
    05/12/1993

32. Camille A. Sheats                           East Point, GA

33. Marian K. Murta Bell                        Moscow, ID

34. Kathryn J. McCatherin                       Jensen Beach, FL

35. Carollee E. Brue                            Brodheadsville, PA

36. Edward F. Adams                             Marietta, GA

37. William & Joyce Corder                      Newark, OH

38. Randall S. Hart                             Midwest City, OK

39. Katherine Barbara Doyle                     Annadale, VA

40. Raymond Michalek                            New York, NY

41. Ann Conde                                   East Patchogue, NY

42. Colette E. Hensley                          Cosby, TN

43. Robert H. Massey                            Roanoke, VA
    Angela M. Wallace, Joint Tenant

44. Eleanor B. Clayton                          Winston-Salem, NC

45. Elizabeth Russitano                         Ridge, NY

46. Jane A. Czarnota                            Garnet Valley, PA

| | |
|---|---|
| 47. Mary Ann Johnson | Rockport, MA |
| 48. James A. Burke | Alexandria, VA |
| 49. Mary McKay | Wahoo, NE |
| 50. Emily M. Clayton | Bosque Farms, NM |
| 51. Charles E. Kern Jr.<br>Heidi A. Kern | Oakland, MD |
| 52. Dorthy Glomb | Somerset, NJ |
| 53. Penni S. & Don C. Klick JT Ten | Anthem, AZ |
| 54. Joshua Mayer | Colorado Springs, CO |
| 55. Charles R. Maier | Wayne, NE |
| 56. Marilyn A. Farr | Houston, TX |
| 57. Lynn Griesmeyer | Rolling Meadows, IL |
| 58. Alphonse Porpora | West Babylon, NY |
| 59. Betty S. Lee | Princeton, WV |
| 60. Bernadette Rowe | Ft. Washington, MD |
| 61. Peyer Family Revocable Trust<br>UAD June 6, 2015<br>Harold A. & Donna Lee Peyer, Co-<br>TTEES | Kent, WA |
| 62. Jo Ann Woodall | Mesa, AZ |
| 63. Anthony Buccarelli | Hollywood, FL |
| 64. Jack B. Lyle | West Melbourne, FL |
| 65. Ronald Lee Paschal | High Point, NC |
| 66. Estate of Dorothy A. Hare<br>JoAnne M. Ludwig | Portland, OR |

| | |
|---|---|
| 67. Jeline H. Ware | Carmichael, CA |
| 68. Carol Gilmore | Grand Junction, CO |
| 69. Diana Rank | Arma, KS |
| 70. Susan G. Braman, TTEE<br>Susan G. Braman Revocable Trust<br>U/A 03/12/15 | Titusville, FL |
| 71. Carole S. Carthron | Alpharetta, GA |
| 72. Joyce G. Sipiczky | Courtland, VA |
| 73. Dianna Steele Olsen, Trustee<br>Bob and Marlene Steele Irrevocable Trust | St. Mary's, GA |
| 74. Judith D. Coffren | Easton, MD |

(3) Accordingly, the Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation. The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Lead Plaintiffs, and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. The persons and entities listed above are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Stipulation or this Judgment.

(4) The Releases set forth in paragraphs 5 and 6 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a)    Without further action by anyone, upon the Effective Date of the Settlement, Lead Plaintiffs and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged any and all Released Plaintiffs' Claims against Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any and all Released Plaintiffs' Claims against any of the Defendants' Releasees. This Release shall not apply to any of the Excluded Plaintiffs' Claims (as that term is defined in paragraph 1(nn) of the Stipulation).

(b)    Without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged any and all Released Defendants' Claims against Lead Plaintiffs and the other Plaintiffs' Releasees, and shall forever be barred and enjoined from prosecuting any and all Released Defendants' Claims against any of the Plaintiffs' Releasees. This Release shall not apply to any of the Excluded Defendants' Claims (as that term is defined in paragraph 1(mm) of the Stipulation).

(5) Notwithstanding the above, nothing in this Judgment shall bar any action by any of

43

the Parties to enforce or effectuate the terms of the Stipulation or this Judgment. The Court also finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Actions.

(6) Neither this Judgment, the Term Sheet, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Term Sheet and the Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, the Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith): (a) shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Lead Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; (b) shall be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any

presumption, concession, or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or (c) shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Stipulation represents the amount which could be or would have been recovered after trial; *provided, however*, that the Parties and the Releasees and their respective counsel may refer to this Judgment and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement.

(7) Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation, and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or Litigation Expenses by Lead Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Settlement Class Members for all matters relating to the Action.

(8) Without further approval from the Court, Lead Plaintiffs and Defendants are hereby

45

authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. Without further order of the Court, Lead Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

(9) If the Settlement is terminated as provided in the Stipulation, this Judgment shall be vacated and rendered null and void, and shall be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiffs, the other Settlement Class Members, and Defendants, and Lead Plaintiffs and Defendants shall revert to their respective positions in the Action as of immediately prior to the Parties' agreement-in-principle to settle on September 30, 2021, as provided in the Stipulation.

The Clerk of Court is respectfully directed to enter judgment, consistent with this Ruling and Order, and to close this case.

SO ORDERED at Bridgeport, Connecticut, this 20th day of May, 2022.

_/s/ Victor A. Bolden_____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE